# 24-2386

*To Be Argued By:*
Bernadette M. Rappold

## United States Court of Appeals
### For the Second Circuit
#### Docket No. 24-2386

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

—v.—

EZ LYNK, SEZC, PRESTIGE WORLDWIDE SEZC,
THOMAS WOOD, BRADLEY GINTZ,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES**

Dated: December 13, 2024

GREENBERG TRAURIG, LLP
*Attorneys for Defendants-Appellees,*
*EZ Lynk SEZC, Prestige Worldwide SEZC,*
*Thomas Wood, and Bradley Gintz*

[ATTORNEY NAMES ON FOLLOWING
PAGE]

Hal S. Shaftel
Adam Kirschbaum
One Vanderbilt Avenue
New York, NY 10017
212.801.9200
shaftelh@gtlaw.com
kirschbauma@gtlaw.com

Christopher J. Neumann
1144 15th Street, Suite 3300
Denver, CO 80202
303.572.6551
neumannc@gtlaw.com

Bernadette M. Rappold
1717 Arch Street, Suite 400
Philadelphia, PA 19103
202.412.3580
rappoldb@gtlaw.com

# DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees EZ Lynk SEZC, and Prestige Worldwide SEZC, by and through their undersigned counsel, hereby certify as follows:

- Louisiana corporations, Franklin Specs, Inc. ("Franklin") and Cavologies Enterprises, Inc. ("Cavologies"), each own 50% of the shares in EZ Lynk SEZC, which is a Special Economic Zone Company organized under the laws of the Cayman Islands.

- Louisiana corporations, Gutenberg Presses, Inc. ("Gutenberg") and Globepaw Systems, Inc. ("Globepaw"), each own 50% of the shares in Prestige Worldwide SEZC.

Neither Franklin, Cavologies, Gutenberg, nor Globepaw is a publicly held corporation.


Dated: December 13, 2024

Hal S. Shaftel
Adam Kirschbaum
One Vanderbilt Avenue
New York, NY 10017
212.801.9200
shaftelh@gtlaw.com
kirschbauma@gtlaw.com

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENT ................................................................. 3

TABLE OF CONTENTS ..................................................................... 4

TABLE OF AUTHORITIES .................................................................. 6

STATEMENT OF THE ISSUES PRESENTED FOR APPEAL......................... 12

INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 14

STATEMENT OF THE CASE ................................................................ 23

    I.    The Government Appeals the Trial Court's Ruling that Section 230 Immunizes EZ Lynk from Its Section 203 Claim. .................... 23

    II.    The Complaint Alleges the EZ Lynk System is an ICS which Publishes Content—Delete Tunes—Created by Unrelated Third Parties. ...................................................................................... 24

    III.    The Complaint Fails to Allege the EZ Lynk System is a "Part or Component" That EZ Lynk "Knows or Should Know" Has a "Principal Effect" of Defeating Emissions Controls...................... 25

    IV.    The Government's Attempt to Modify Its Allegations that EZ Lynk Participates in the Creation of Delete Tunes and Encourages Their Use on the EZ Lynk System.............................. 28

ARGUMENT ................................................................................... 30

    I.    Section 230 Immunizes EZ Lynk from the Government's Claim. ....................................................................................... 30

    II.    EZ Lynk, Based on the Government's Allegations, Meets all Prongs Required for Section 230 Immunity................................... 34

        A.    Prong 1: EZ Lynk is, as the government allegations make plain, an "interactive computer service." .............................. 34

        B.    Prong 2: EZ Lynk meets the second prong of Section 230 because the government seeks to hold it liable for publication of allegedly harmful content.............................. 40

        C.    Prong 3: EZ Lynk meets the third prong of 230 because third parties, not EZ Lynk, created the delete tunes at issue. ................................................................................... 48

    III.    Even Absent 230 Immunity, the Government Does Not and Cannot Plead a Violation under the Clean Air Act......................... 53

A.    Part or Component. ............................................................ 55
B.    Principal Effect. ................................................................ 59
C.    Know or Should Know. ...................................................... 62

CONCLUSION ......................................................................... 65

CERTIFICATE OF COMPLIANCE................................................. 69

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)....................................................................52, 53

*In re Apple Inc. App Store Simulated Casino-Style Games Litigation*,
   625 F. Supp. 3d 971 (N.D. Cal. 2022) ....................................................46, 55

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)...........................................................................53

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................66

*Ashcroft v. Iqbal*,
   556 U.S. 678 (2009)........................................................................................53

*Barnes v. Yahoo!, Inc.*,
   570 F.3d 1096 (9th Cir. 2009)........................................................................45

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Business Machines Corp.*,
   110 F.4th 106 (2d. Cir. 2024).........................................................................19

*CFTC v. Vartuli*
   228 F.3d 94 (2d Cir. 2000) ............................................................................40

*Coffee v. Google, LLC*,
   No. 20-cv-03901-BLF, 2021 WL 493387 (N.D. Cal. Feb. 10, 2021)..............................................................................................37, 38, 55

*Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
   519 F.3d 666 (7th Cir. 2008)..........................................................................54

*Diep v. Apple, Inc.*,
   No. 22-16514, 2024 WL 1299995 (9th Cir. Mar. 27, 2024)...........................37

*Doe v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016)..........................................................................49

*Doe v. MySpace Inc.*,
　　528 F.3d 413 (5th Cir. 2008)..........................................................................43

*Doe v. Reddit, Inc.*,
　　143 S. Ct. 2560 (2023) ...............................................................................55

*Doe v. Reddit, Inc.*,
　　2021 WL 5860904 (C.D. Cal. Oct. 7, 2021) ...................................................54

*Does 1-6 v. Reddit, Inc.*,
　　51 F.4th 1137 (9th Cir. 2022).........................................................................54

*Dyroff v. Ultimate Software Group, Inc.*,
　　934 F.3d 1093 (9th Cir. 2019).......................................................18, 35, 55

*Erie Insurance Co. v. Amazon.com, Inc.*,
　　925 F.3d 135 (4th Cir. 2019).........................................................................50

*F.T.C. v. LeanSpa, LLC*,
　　920 F. Supp. 2d 270 (D. Conn. 2013).....................................................34, 35

*Fair Housing Council v. Roommates.com, LLC*,
　　521 F.3d 1157 (9th Cir. 2008).................................................18, 32, 33, 34, 49

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
　　838 F.3d 158 (2d Cir. 2016).....................................................................32, 38

*Force v. Facebook, Inc.*,
　　934 F.3d 53 (2d Cir. 2019) ...............................17, 32, 33, 43, 47, 52, 53, 54

*Free Kick Master LLC v. Apple Inc.*,
　　140 F. Supp. 3d 975 (N.D. Cal. 2015) ...........................................................37

*Fyk v. Facebook, Inc.*,
　　808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067
　　(2021).......................................................................................................18

*G.G. v. Salesforce.Com, Inc.*,
　　76 F.4th 544 (7th Cir. 2023) .........................................................................50

*Ginsberg v. Google Inc.*,
　　586 F. Supp. 3d 998 (N.D. Cal. 2022) ...........................................................44

*Henderson v. Source for Pub. Data, L.P.*,
  53 F.4th 110 (4th Cir. 2022) ...........................................................48

*Herrick v. Grindr LLC*,
  765 F. App'x 586 (2d Cir. 2019)...................................................52

*Herrick v. Grindr LLC*,
  765 Fed. Appx. 586 (2d Cir. 2019).........................................45, 46

*Homaidan v. Sallie Mae, Inc.*,
  3 F.4th 595 (2d Cir. 2021) ...........................................................39

*HomeAway.com, Inc. v. City of Santa Monica*,
  918 F.3d 676 (9th Cir. 2019).......................................................48

*Int'l Ore & Fertilizer Corp. v. SGS Contr. Servs., Inc.*,
  38 F.3d 1279 (2d Cir. 1994).........................................................20

*Kimzey v. Yelp! Inc.*,
  836 F.3d 1263 (9th Cir. 2016).....................................................55

*King v. Facebook, Inc.*,
  2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ...........................18

*Lee v. Bankers Trust Co.*,
  166 F.3d 540 (2d Cir. 1999)..........................................................58

*Microsoft Corp. v. i4i Ltd. P'ship*,
  564 U.S. 91 (2011)........................................................................39

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009).......................................................34

*Pani v. Empire Blue Cross Blue Shield*,
  152 F.3d 67 (2d Cir. 1998) ...........................................................35

*Panjiva, Inc. v. U.S. Customs & Border Protection*,
  975 F.3d 171 (2d Cir. 2020).........................................................39

*Parker v. Paypal, Inc.*,
  No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) .....................44

*Ratermann v. Pierre Fabre USA, Inc.*,
  651 F. Supp. 3d 657 (S.D.N.Y. 2023)...........................................33

8

*Ricci v. Teamsters Union Loc. 456*,
781 F.3d 25 (2d Cir. 2015) ........................................................33, 36

*Rich v. Fox News Network*,
LLC, 939 F. 3d 112 (2d Cir. 2019)...............................................53

*Rosi v. Aclaris Therapeutics, Inc.*,
2021 U.S. Dist. LEXIS 59670 (S.D.N.Y. Mar. 29, 2021) .............................67

*Spinelli v. Nat. Football League*,
903 F.3d 185 (2d. Cir. 2018).........................................................19

*U.S. v. EZ Lynk, SEZC*,
S.D.N.Y. Case No. 1:21-cv-01986-MKV, Dkt. No. 1....................................24

*United States v. eBay Inc.*,
2023 WL 4350523 (E.D.N.Y. Sept. 30, 2024) ..............................................54

*United States v. Stratics Networks, Inc.*,
721 F. Supp. 3d 1080 (S.D. Cal. 2024)........................................47

*Universal City Studios, Inc. v. Corley*
273 F.3d 429 (2d Cir. 2001).........................................................40

*United States ex rel. Vavra v. KelloggBrown & Root, Inc.*
848 F.3d 366 (5th Cir. 2017).........................................................67

*Western Capital Design, LLC v. N.Y. Mercantile Exch.*,
25 Fed. Appx. 63 (2d Cir. 2002) ...................................................62

*Willis Mgmt. (Vt.), Ltd. v. United States*,
652 F.3d 236 (2d Cir. 2011).........................................................56

*Ynfante v. Google LLC*,
2023 U.S. Dist. LEXIS 96074 (S.D.N.Y. June 1, 2023) .........................56, 64

*Ynfante v. Google LLC*,
2023 WL 3791652 (S.D.N.Y. June 1, 2023) ..............................................17

*Zeran v. Am. Online, Inc.*,
129 F.3d 327 (4th Cir. 1997).........................................................33

**State Cases**

*Daniel v. Armslist, LLC*,
  926 N.W.2d 710 (Wis. 2019) .................................................................51, 52

**Federal Statutes**

42 U.S.C. § 7521(m) ......................................................................21, 28, 59, 60

42 U.S.C. § 7521 § 202(m) .......................................................................39

42 U.S.C. § 7522(a)(3)(B)....................................12, 13, 14, 15, 19, 56, 62, 65

42 U.S.C. § 7542 ...................................................................................12

47 U.S.C. § 230 ...................................................................................14

47 U.S.C. § 230(c)(1)...........................................................................12, 39

47 U.S.C. § 230(f)(2) ...........................................................................36, 68

CAA § 203(a)(3)(B)........................................19, 20, 24, 27, 57, 68

Clean Air Act ......................................................................................16, 45

Clean Air Act § 203 .............................................................................16, 19

Federal Trade Commission Act .......................................................................49

**Rules**

Fed. R. App. P. 26.1.................................................................................3

Fed. R. App. P. 32(g) ..............................................................................71

Fed. R. Civ. P. 12(b)(6)...........................................................................56

**Regulations**

40 C.F.R. pt. 86 ...................................................................................21

40 C.F.R. § 86 ...................................................................................60

40 C.F.R. § 86.1808................................................................................60

40 C.F.R. § 86.1808-01(f)(2)(ii)(G) ...............................................................51

40 C.F.R. § 86.1808-01(f)(17)(iv)...........................................44, 51, 61

68 Fed. Reg. 38428 (June 23, 2003)....................................................21

68 Fed. Reg. 38429 (June 23, 2003)............................................21, 61

**Other Authorities**

Component, MERRIAM-WEBSTER.COM (Dec. 9, 2024),
https://www.merriam-webster.com/dictionary/component..............................58

Constituent, MERRIAM-WEBSTER.COM (Dec. 9, 2024),
https://www.merriam-webster.com/dictionary/constituent#h2.................58

Part, MERRIAM-WEBSTER.COM (Dec. 9, 2024), https://www.merriam-
webster.com/dictionary/part................................................................................58

## STATEMENT OF THE ISSUES PRESENTED FOR APPEAL

- Whether the district court properly dismissed the government's first claim for relief under Section 203(a)(3)(B) of the Clean Air Act (the "Act" or "CAA"), 42 U.S.C. § 7522(a)(3)(B),[1] holding that Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("Section 230" or "CDA") immunizes providers of interactive computer services ("ICS") like EZ Lynk SEZC[2] ("EZ Lynk") from suit for content provided by others, where the government's allegations: (a) establish EZ Lynk provides an ICS; (b) treat EZ Lynk as a publisher of allegedly illegal content; and (c) show the purportedly unlawful content at issue was created by unnamed third parties rather than EZ Lynk. (Joint Appendix ("JA"), filed Nov. 8, 2024, at 104-29).

---

[1] The Complaint contained two claims for relief: the first claim under section 203(a)(3)(B) of the CAA ("Section 203 Claim" or the "Claim"), 42 U.S.C. § 7522(a)(3)(B), alleging defendants manufactured and sold an illegal "defeat device," and the second claim under section 208 of the CAA (the "Section 208 Claim"), 42 U.S.C. § 7542, for alleged failure to respond to an information request. Following the trial court's dismissal of the Section 203 Claim, the government voluntarily dismissed the Section 208 Claim with prejudice, a dismissal ratified by the court below and reflected in the district court's judgment. JA 131.

[2] Each of Defendants-Appellees (EZ Lynk SEZC, Prestige Worldwide SEZC ("Prestige"), Thomas Wood, and Bradley Gintz) has unique rights and defenses to the action on appeal. Since common issues predominate, throughout this brief we refer to them collectively as "EZ Lynk." Where an allegation or legal point demands, we may refer to them individually. We do so without waiving any of their rights or defenses, and each of the four Defendants-Appellees expressly reserves its rights and defenses.

12

- Whether the district court erred by stating in *dicta* the EZ Lynk System constitutes a "part" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). JA 117.

- Whether the district court erred by stating in *dicta* the government adequately alleged "'a principal effect' of the EZ Lynk System is to 'defeat' emissions controls and EZ Lynk 'knows or should know' it is 'put to such use.'" *Id.*

## INTRODUCTION AND SUMMARY OF ARGUMENT

Appellee EZ Lynk manufactures a wireless pass-through interface and smartphone application and hosts the EZ Lynk Cloud (collectively the "EZ Lynk System,") connecting vehicle owners and technicians with each other and to vehicle onboard diagnostic ("OBD") ports and systems. Critically, and as the government acknowledges, ***EZ Lynk neither creates nor sells any content, unlawful or otherwise, that users may have allegedly transmitted*** through the EZ Lynk System to vehicle OBD ports or to the EZ Lynk Cloud. JA 109. Yet in its Complaint, the government seeks to hold EZ Lynk liable under Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), for allegedly unlawful content ("delete tunes") created or provided by third parties. JA 13-44.

Recognizing liability for the content of others would stymie internet and related technology innovation, Congress enacted Section 230, 47 U.S.C. § 230, in 1996 to immunize providers and users of any ICS for third party content. As the trial court (Vyskocil, J.) correctly held, the Complaint alleges the EZ Lynk System is an ICS, the government claim is based on information provided by another content provider, and the government seeks to treat EZ Lynk as the publisher of this third-party content. JA 120 ("the EZ Lynk Defendants meet the first test for immunity because they provide an 'interactive computer service.'"); JA 109 (the "Complaint does not allege that any of the defendants create delete tunes."); JA 122 ("The government's Section 203 claim is based on the use of the EZ Lynk System to

acquire and install third-party software capable of defeating emissions controls," and "the software is created by '[t]hird-party companies and individuals.'"). Accordingly, the lower court held EZ Lynk is entitled to Section 230 immunity and dismissed the government's claim that EZ Lynk manufactures an unlawful "defeat device" in violation of section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). JA 126.

For the following reasons, the government's renewed arguments that EZ Lynk is not entitled to Section 230 immunity are wrong on every one of Section 230(c)(1)'s three prongs, and the decision of the district court should be affirmed.

*First*, the EZ Lynk System—a platform that allows users to publish software on its cloud platform that can be used with its wireless computer interface—is a paradigmatic ICS. However, in its brief the government reargues its theory that Section 230 applies only to online discussion forums and information for a human audience, but not to software, a position (as the government admits) no court has adopted, and the district court rejected. Appellant Brief ("App. Br."), at 25-28; JA 121-22. Adopting such a position would eliminate Section 230 immunity for all cloud storage and application platforms. As the district court stated, "In the absence of the emissions-defeating software created by third parties, and the EZ Lynk Defendants' publication and transmission of that software to drivers via the EZ Lynk Cloud, the government would not have a Section 203 claim against the EZ Lynk Defendants." JA 122.

15

*Second*, the government's claim turns on the purported unlawfulness of delete tunes EZ Lynk allegedly publishes through its cloud service. The government does not allege the EZ Lynk System by itself defeats emissions controls. It alleges third-party delete tunes defeat emissions controls. As the government explains: "It is what the EZ Lynk does with that third-party software—namely, provide the tools necessary, through the whole EZ Lynk System, to access the software from the EZ Lynk Cloud and install it in vehicles using the Auto Agent and Auto Agent App to defeat emissions controls—that forms the basis of the government's Clean Air Act Claim." App. Br., at 33. Tellingly, the government alleges, "EZ Lynk outsources the software *component* to third parties on a cloud-based platform." *Id.* at 34 (emphasis added). It is not unlawful to sell parts or components that do not defeat emissions controls, what is unlawful is to sell the part or component that actually defeats emissions controls—here the third-party delete tunes. JA 118 ("Section 203 of the Clean Air Act does not prohibit selling merely one part of a prohibited 'part.'"). As a result, the government's claims are inextricably tied to EZ Lynk's purported publishing activity, and Section 230 expressly immunizes publishers of content "provided by another information content provider."

*Third*, the delete tunes are created by third parties, not EZ Lynk. Attempts to paint EZ Lynk as a material contributor to their creation—through alleged hosting of an online forum, providing standard technical support to its users, and previewing the EZ Lynk System—are far below the bar this Court has established for material

16

contribution. The Complaint does not, and cannot, allege EZ Lynk contributed to unlawful conduct. EZ Lynk provides a neutral, pass-through system for users to access third-party content. The government attempts to recast its allegations to plead around Section 230. For example, the government re-envisions its allegations about maintaining an online forum to provide technical advice for the EZ Lynk System, loving and liking posts reflecting the use of the EZ Lynk System, and previewing the EZ Lynk System, as allegations that EZ Lynk took the actions of a developer of third-party delete tunes. Courts have rejected this approach. *See, e.g., Ynfante v. Google LLC*, 2023 WL 3791652, at *3 (S.D.N.Y. June 1, 2023) (collecting decisions declining to entertain "artful" and "creative" pleading around Section 230); *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019) ("a defendant will not be considered to have developed third-party content unless the defendant directly and materially contributed to what made the content unlawful.").

The government also requests this Court backtrack on established Section 230 procedure, arguing Section 230 immunity is an affirmative defense and, thus, inappropriate for resolution by motion to dismiss. App. Br., at 21. The government invites this Court to reverse the trial court, thereby enabling it to obtain discovery it hopes will establish its baseless theories. *Id*. No amount of artful repleading, can fix the Complaint's Section 230 flaws. *See, e.g.*, *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting "plead[ing] around section 230").

Invoking Section 230 immunity at the pleading stage is critical. Congress enacted Section 230 to shield ICS providers from expending resources litigating claims based on third-party content. Absent this early immunity from litigation, there would be no viable Internet economy and innovation in smartphone application technology would be severely constrained. Moreover, entertaining the government's request for a fishing expedition would "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008). Although "there will always be close cases where a clever lawyer could argue that something the website operator did encouraged the illegality[,]" dismissal with prejudice is warranted. *Id.*; *see also Fyk v. Facebook, Inc.*, 808 F. App'x 597 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1067 (2021) (affirming dismissal based on § 230 with prejudice); *King v. Facebook, Inc.*, 2021 WL 5279823, at *4 (N.D. Cal. Nov. 12, 2021) (dismissal with prejudice pursuant to § 230.) Because Section 230 immunizes EZ Lynk from the government's claims, EZ Lynk respectfully requests this Court affirm dismissal.

Even assuming the government is correct that Section 230 is an ordinary affirmative defense dismissals are permissible based on an affirmative defense where, as discussed, "the facts necessary to establish the defense are evident on the

face of the complaint." *Spinelli v. Nat. Football League*, 903 F.3d 185, 199 (2d. Cir. 2018).

Lastly, although the Court need not reach any other issue to affirm the trial court's ruling,[3] EZ Lynk addresses additional grounds for dismissal of the Section 203 Claim here. While the trial court correctly held EZ Lynk was entitled to dismissal under Section 230, it nevertheless concluded in *dicta* in a very cursory analysis that the government had alleged a *prima facie* claim under section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B). However, this is at odds with the trial court's statements that "the specific factual allegations in the Complaint support Defendants' assertion that: 1) the EZ Lynk System is 'neutral tool' that, by itself, 'has no effect' on emissions," JA 109; 2) "Section 203 of the Clean Air Act does not prohibit selling merely one part of a prohibited 'part,'"—here the EZ Lynk System, a "neutral tool"—where emissions-defeating software is required to defeat emissions controls, JA 117-18; and, 3) "[i]n the absence of the emissions-defeating software created by third parties, and the EZ Lynk Defendants' publication and transmission of that software to drivers via the EZ Lynk Cloud, the government would not have a Section 203 claim against the EZ Lynk Defendants." JA 122.

---

[3] An appellate court is free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied. *See Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Business Machines Corp.*, 110 F.4th 106, 106 (2d. Cir. 2024).

Contrary to the government's assertions, a thorough analysis, in lieu of the trial court's cursory one, establishes alternative grounds for affirming dismissal of the government's Section 203(a)(3)(B) claim: namely, that the allegations simply do not satisfy the elements of the claim.[4] Indeed, the government fails adequately to allege any of the three elements required for its Section 203 Claim—1) the manufacture or sale of a motor vehicle part or component; 2) where a principal effect of the part or component is to defeat emissions controls; and 3) where the person knows or should know the part or component is being offered for sale for such use.

**First**, the government **never alleges** the EZ Lynk System is a "part or component." Under traditional statutory construction principles, this would include an original or replacement part or component of a motor vehicle or motor vehicle engine, and not merely something that plugs into a car as the district court suggested in its *dicta*. Not only does the district court's interpretation render everything from fuzzy dice to a cell phone a "part or component," but it also ignores separate provisions of the CAA that compel automakers to provide information to enable the

---

[4] Appellees may raise alternative grounds for affirmation but, in so doing, may not seek to enlarge their rights. *Int'l Ore & Fertilizer Corp. v. SGS Contr. Servs., Inc.*, 38 F.3d 1279 (2d Cir. 1994). The claim against EZ Lynk was already properly dismissed on grounds appellees were immune under Section 230. No rights will be enlarged if this Court affirms on other grounds.

development of tools, like the EZ Lynk System, capable of pass-through reprogramming. 42 U.S.C. § 7521(m); *see generally,* 40 C.F.R. Part 86.[5]

Indeed, throughout its brief to this Court, the government repeatedly focuses on the EZ Lynk System's pass-through reprogramming capacity as a signifier of illegality. But it signifies nothing of the sort. Rather, as the Information Availability Rule makes plain, the EPA compels automakers to provide information precisely so that such pass-through, reprogramming tools can be developed, giving consumers freedom to choose where and by whom to have their vehicles serviced.

***Second***, the government fails to allege the EZ Lynk System has a principal effect of defeating emissions controls. As the district court properly concluded, "the EZ Lynk System is a 'neutral tool' that, by itself 'has no effect' on emission," and "it is the so-called delete tunes that are capable of defeating [emissions controls]" not the EZ Lynk System. JA 109. While the government alleges EZ Lynk enabled third parties to delete emissions controls, the necessity of these intervening acts only

---

[5] In announcing the rule requiring automakers to share information necessary for the development of third-party reprogramming tools, like the EZ Lynk System, the U.S. Environmental Protection Agency ("EPA") indicated the requirement was "intended to preserve freedom of choice by consumers in where to have their vehicles serviced." EPA, *Control of Air Pollution From Motor Vehicles and New Motor Vehicle Engines; Revisions to Regulations Requiring Availability of Information for Use of On-Board Diagnostic Systems and Emission-Related Repairs on 1994 and Later Model Year Light-Duty Vehicles and Light-Duty Trucks and 2005 and Later Model Year Heavy-Duty Vehicles and Engines Weighing 14,000 Pounds Gross Vehicle Weight or Less,* 68 Fed. Reg. 38428, 38429 (June 23, 2003) ("Information Availability Rule").

confirms the deletion of emissions controls cannot be a principal effect of the EZ Lynk System. Section 203 prohibits "parts or components" with a "principal effect" of defeating emissions; it does not prohibit parts or components that may allegedly be used by unnamed third parties, contrary to the manufacturer's terms, *with other parts or components* that have a principal effect of defeating emissions.

*Third*, while the government baldly alleges certain technical representatives had knowledge the EZ Lynk System was being used to install delete tunes, its Complaint contains no credible allegations imputing this knowledge to EZ Lynk. The government's allegations that unknown representatives administered a Facebook group or posted to social media, without any indication of their authority to bind any of the Defendants, is simply insufficient to demonstrate EZ Lynk's knowledge. Similarly, the government makes no specific allegations that EZ Lynk helped drivers defeat emission controls. As the district court observed, "the Complaint does not include any posts that clearly state or imply that an EZ Lynk customer service representative helped a driver defeat emissions controls." JA 125.

## STATEMENT OF THE CASE

### I. The Government Appeals the Trial Court's Ruling that Section 230 Immunizes EZ Lynk from Its Section 203 Claim.

On March 8, 2021, the government filed its Complaint against EZ Lynk SEZC; Prestige Worldwide SEZC; Bradley Gintz; and Thomas Wood (collectively "Defendants") (*U.S. v. EZ Lynk, SEZC*, S.D.N.Y. Case No. 1:21-cv-01986-MKV, Dkt. No. 1). In the Complaint, the government alleged Defendants violated the Clean Air Act through 1) the manufacture and sale of an alleged defeat device prohibited under CAA Section 203(a)(3)(B); and 2) providing an allegedly incomplete response to an information request from the EPA under CAA Section 208.

Defendants moved to dismiss on September 23, 2021, arguing Section 230 shields them from liability, and the government failed to adequately plead its claims. (*EZ Lynk*, Dkt. No. 44). The government cross-moved for summary judgment on its Section 208 Claim. (*EZ Lynk*, Dkt. No. 46). The government failed to amend its Complaint following EZ Lynk's motion to dismiss.[6]

On March 28, 2024, the trial court (Vyskocil, J.) denied the government's cross-motion for summary judgment and granted in part and denied in part Defendants' motion to dismiss. The district court held "it is clear on the face of the

---

[6] Indeed, the government failed to comply with Rule 4.C. of the trial court's Individual Rules of Practice, which requires the non-moving party within 14 days of the filing of a motion to dismiss to: "notify the Court and its adversary in writing whether (i) it intends to file an amended pleading and when it shall do so, or (ii) it will rely on the pleading being attacked." The government did neither, thereby embracing a litigation strategy to stand on its Complaint. *See generally* JA 1-12.

Complaint that Section 230 of the Communications Decency Act provides immunity" to Defendants from liability on the government's CAA Section 203 claim. JA 105.

As to the 208 Claim, the district court allowed it to proceed even though it found "the specific factual allegations in the Complaint support Defendants' assertion that the EZ Lynk System is a neutral tool that, by itself, has no effect on emissions." JA 109.

At the government's request, the parties entered a stipulation voluntarily dismissing the Section 208 Claim with prejudice on July 5, 2024, thereby disposing of the only remaining claim in the Complaint. JA 130.

Final judgment was entered on July 11, 2024. JA 131. The government appealed the judgment on September 6, 2024. JA 132.

## II. The Complaint Alleges the EZ Lynk System is an ICS which Publishes Content—Delete Tunes—Created by Unrelated Third Parties.

The government alleges EZ Lynk is an "internet-based service" and "cloud computing platform" that works alongside a "device that plugs into vehicle computer systems" and a "smartphone application that connects . . . to the EZ Lynk Cloud[.]" JA 13-14, ¶ 1; JA 25-26, ¶ 48. It further claims drivers who use EZ Lynk "are able to send and receive data and software relating to their vehicles' computer systems." JA 25-26, ¶ 48. The government also alleges EZ Lynk maintains an online discussion forum for its users to communicate about EZ Lynk. JA 31, ¶ 64.

According to the government, certain "calibration software" that is passed through the EZ Lynk System was developed to defeat EPA emissions controls. JA 13-14, ¶ 1; JA 26, ¶ 50. The purportedly unlawful software, which the government refers to as "delete tunes," is allegedly published by EZ Lynk in its cloud. JA 13-14, ¶ 1; JA 25-26, ¶ 48. Further, the government alleges EZ Lynk does not sufficiently moderate certain content posted on the online forum by third parties about defeating emissions controls. JA 14, ¶ 2; JA 31-33, ¶¶ 64-67.

The government expressly alleges "[t]hird-party companies and individuals create" the software which EZ Lynk publishes that is, per the government, unlawful. JA 26, ¶ 50. The tunes at issue in this case are "custom calibration software" that developers allegedly create and upload to the EZ Lynk Cloud. JA 40, ¶ 93. The government further alleges certain retailers "offer[] [EZ Lynk] for sale separately (without tunes)," and two retailers offer a "package" which includes "delete tuning," but nowhere alleges EZ Lynk bundles its product with delete tunes in any way. JA 31, ¶ 63. The government does not allege EZ Lynk ever packages or sells the EZ Lynk System with delete tunes.

## III. The Complaint Fails to Allege the EZ Lynk System is a "Part or Component" That EZ Lynk "Knows or Should Know" Has a "Principal Effect" of Defeating Emissions Controls.

Remarkably, the government never alleges the EZ Lynk System is a "part or component" within the meaning of the Act. Indeed, the expression, "part or component," appears just five times in the government's pleading, and never

substantively – rather, in each instance as a threadbare recitation or paraphrasing of Section 203(a)(3)(B). JA 13-14, 21, 23, 25, 40, 43, ¶¶ 1, 32, 38, 47, 92, and ¶ a. on p. 31. Instead, the government pleads the EZ Lynk System as a whole is a "product" or "device," JA 13-15, 23-25, 37, ¶¶ 1, 5, 6, 40, 41, 45, 46, 78; the AutoAgent™ is an "electronic" or "physical" "device"; the App is a "smartphone application"; and the Cloud is a "cloud computing platform" or "Internet based service." JA 13-14, 25-26, ¶¶ 1, 11, 47, 48.

Similarly, the government does not allege the EZ Lynk System has a "principal effect" of defeating emissions controls. Throughout the Complaint, the government conflates the effects of the perfectly legal EZ Lynk System with the effects of third-party "delete tunes." JA 26, ¶ 50. However, the EZ Lynk System is manufactured and sold as a neutral, pass-through reprogramming tool. JA 19-21, ¶¶ 24, 27-30. The allegations ostensibly relating to "principal effect" come in just two flavors: either parroting the Act through quotes or paraphrasing, JA 21, 23, ¶¶ 32, 40; or referencing bad things others can allegedly do with the EZ Lynk System, JA 26-27, 30, ¶¶ 49-52, 59.

The government claims the chief result of the EZ Lynk System is the deletion of emissions controls. JA 14, 26, 29, ¶¶ 2, 49-50, 57. However it inconsistently alleges that this result is caused by "delete tunes," and not the EZ Lynk System; the EZ Lynk System is not manufactured or sold containing "delete tunes"; some, but not all, purchasers of the EZ Lynk System later acquire from third parties and run

26

"delete tunes" to delete emissions controls; and the EZ Lynk System is an aftermarket OBD scan tool, the manufacture and sale of which is expressly provided for by Congress and EPA in section 202(m) of Clean Air Act, 42 U.S.C. § 7521(m), and in the Information Availability Rule. *Id.*

With respect to EZ Lynk's knowledge, the Complaint alleges unidentified "representatives" (JA 32, ¶ 66) and "technical support representatives" (JA 32-33, ¶ 67) some of whom are not even alleged to be EZ Lynk employees (JA 33, ¶ 70) viewed, "loved" or "liked" posts (JA 32, ¶ 66) of similarly unidentified individuals posting about their cars on a Facebook group four times. JA 32, ¶ 66; JA 34, ¶ 71. Further, unnamed EZ Lynk "representatives" are vaguely and conclusorily alleged to "maintain" and "administer" the Facebook forum, which the government alleges is not publicly accessible. JA 32-33, ¶¶ 66-67.

There are no allegations that any of the named defendants are members of this Facebook forum or that they monitored, viewed or interacted with any of these posts, the low-level unnamed representatives who allegedly did, or any of the individuals who posted on the various sites.

To show knowledge, the government also attempts to rely on "[h]undreds of posts, statements, pictures, and/or videos on online message boards, Youtube.com, and social media sites [to] show the use of the EZ Lynk System to defeat vehicles' emissions controls." JA 34-35, ¶ 71. However, the government does not allege even one unnamed representative, much less any of the named Defendants, has any

knowledge of any of these posts, statements, pictures, or other interactions authored by unidentified "drivers" across the various platforms. *Id.* All the government alleges is EZ Lynk sells a product with no effect on emissions—or on *anything*. Products created by others may have effects, but not the EZ Lynk System.

## IV. The Government's Attempt to Modify Its Allegations that EZ Lynk Participates in the Creation of Delete Tunes and Encourages Their Use on the EZ Lynk System.

The government claims that by allegedly encouraging users to install delete tunes, providing technical support, and collaborating with certain technicians during the development of the EZ Lynk System, EZ Lynk materially contributed to the development of third-party delete tunes.

The government claims unidentified EZ Lynk workers "loved" posts about delete tunes in an online forum, and this transformed EZ Lynk into a developer of delete tunes. JA 32-33, ¶ 67. Similarly, the government alleges EZ Lynk "representatives" "provided forum members with the EZ Lynk Tech Support phone number and e-mail address" which constituted efforts to "assist members experiencing problems[.]" JA 33, ¶ 69.

The government describes a customer seeking to resolve a dashboard malfunction indicator light that "illuminated after a delete tune was installed." JA 32-33, ¶ 67. The government explains the alleged "problems" were "fixed with the help of EZ Lynk's Technical Support Representative and hpp tunes." *Id.* Not only is it unclear which problems were solved by EZ Lynk as opposed to "hpp tunes," but

as the government alleges "delete tunes may **prevent** [the malfunction indicator] light from illuminating," not "**cause**" the light to illuminate. JA 26, ¶ 49 (emphasis added). Lastly, the government alleges EZ Lynk "regularly collaborate with technicians to ensure that delete tunes . . . are readily available[.]" JA 29, ¶ 57. The example the government provides is that a third-party "technician" worked with EZ Lynk "during the development of the "=EZ Lynk System." *Id.* Again, nowhere does the government allege EZ Lynk tested delete tunes or worked with "third-party technician[s]" to develop delete tunes—nor does the government describe the nature of this work with EZ Lynk.

Recognizing its failure to allege facts in the Complaint sufficient to show EZ Lynk participated in the creation of delete tunes, the government modifies its allegations from its Complaint, to its Response to EZ Lynk's Motion to Dismiss, to its Appellate Brief.

| Compl. | Resp. to MTD | App. Br. |
|---|---|---|
| "Defendants **Enable the Creation** of Effective Delete Tunes . . . ." Compl. ¶ 57. | "Defendants **contribute to the creation** of delete tunes . . . ." MTD, at 7. | "EZ Lynk **helps create** delete tunes . . . ." App. Br., at 11. |
| "Defendants . . . collaborate . . . *to ensure that delete tunes . . . are readily available to drivers using the EZ Lynk System*." *Id.* ¶ 57. | "Defendants collaborate . . . *to ensure that they can produce delete tunes compatible with the EZ Lynk System*." *Id.* at 7. | "EZ Lynk collaborates . . . *to ensure that they produce delete tunes specifically for use with the EZ Lynk System*." *Id.* |
| "**GDP Tuning** noted . . . *it* was 'fortunate' to be able 'to work with the guys at EZ Lynk during the development | "**GDP Tuning**—noted that *it* was 'fortunate' to be able 'to work with the guys at EZ Lynk during development of | "one **technician** . . . stated that *it* was 'fortunate' to be able 'to work with the guys at EZ Lynk during development |

| Compl. | Resp. to MTD | App. Br. |
|---|---|---|
| of ***this state of the art software* . . . .**" *Id.* ¶ 57. | [***its***] **state of the art software**. . . ." *Id.* at 7. | of [***its***] **state of the art software** . . . ." *Id.* at 12. |
| "[Defendants] similarly previewed the EZ Lynk System for [PPEI], another ***creator of delete tunes*** in the aftermarket defeat device industry." *Id.* ¶ 58. | "Defendants also previewed the EZ Lynk System's technology for [PPEI], a technician that has ***created many delete tunes for the EZ Lynk System*** . . . ." *Id.* at 7. | "EZ Lynk previewed the EZ Lynk System's technology for [PPEI], another technician that . . . ***created delete tunes for customers to install using the system***." *Id.* at 12. |
| "EZ Lynk technical support representatives use the EZ Lynk Forum to ***provide technical assistance to drivers to support deletion*** of emissions controls." *Id.* ¶ 67. | "EZ Lynk routinely ***assists users with installing delete tunes*** via the EZ Lynk System." *Id.* at 8. | "EZ Lynk also ***provides technical assistance*** to drivers . . ., ***helping them install delete tunes to ensure they can successfully defeat their vehicles' emissions controls.***" *Id.* at 13. |

The government's increasing spin on its allegations make clear what it wishes it could but did not allege.

## ARGUMENT

### I. Section 230 Immunizes EZ Lynk from the Government's Claim.

The government's claims are barred in their entirety by Section 230.[7] The Complaint, on its face, alleges EZ Lynk is an ICS, its causes of action treat EZ Lynk as a publisher of third-party content (alleged delete tunes), and the government alleges the delete tunes are not created by EZ Lynk, but by others. This requires affirmation of the trial court's dismissal.

---

[7] Although the Section 208 claim survived the trial court's Section 230 ruling, the parties then stipulated to the government's request to voluntarily dismiss Count II with prejudicing, thus resolving all the claims in the case.

The Second Circuit follows the "general agreement" of other Circuits that Section 230 "should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019). The Second Circuit has aligned with other appellate courts, such as the Ninth Circuit, in resolving "close cases" "in favor of immunity." *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (citing *Roommates.com*, 521 F.3d at 1174). And this is not a close case.

The trial court correctly granted dismissal based on Section 230 at the earliest opportunity. It recognized Section 230's purpose is to prevent the chilling of Internet communication by bogging down innovators in costly and time-consuming litigation. *See Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 27-28 (2d Cir. 2015) (*quoting Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997)) ("Section 230 was enacted … to maintain the robust nature of Internet communication and … to keep government interference to a minimum"); *Force*, 934 F.3d at 63 (quoting *Ricci*, 781 F.3d at 27-28); *Ratermann v. Pierre Fabre USA, Inc.*, 651 F. Supp. 3d 657, 666 (S.D.N.Y. 2023).

The Complaint contains a multitude of allegations that EZ Lynk is an interactive computer service, the remaining claim is tied to its publication of content, and the unlawful content at issue is developed by third parties. (*See* Statement of the Case, *supra*.) Even if given leave, the government cannot amend its Complaint to plead around Section 230, and the government has already strategically declined to do so in this case.

31

In its brief to this Court, the government also misstates the applicable Section 230 standard and asks this Court to flip Section 230 on its head by precluding defendants from invoking immunity at the pleading stage. App. Br., at 36-37. Section 230 is meant to be not just a defense, but complete immunity. *See, e.g.*, *Roommates.com*, 521 F.3d at 1175 ("section 230 must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles"). The only way to "protect[]" interactive computer services from such "costly and protracted legal battles" is to resolve Section 230 immunity "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A contrary result would lead to the "death by ten thousand duck-bites" that Congress sought to avoid when it enacted Section 230. *Roommates.com*, 521 F.3d at 1174.

None of the cited authorities Plaintiff relies on about affirmative defenses analyze Section 230. The sole Section 230 authority the government cites is from a District of Connecticut decision citing a prior decision from the same judge. *F.T.C. v. LeanSpa, LLC*, 920 F. Supp. 2d 270, 271 (D. Conn. 2013). The judge, relying on another of her own rulings, found that there were many factual issues, including that the service involved did not host any websites but rather merely provided links—an issue, that court believed, requiring resolution at a later stage in the case.

That is not so here, where the government's allegations demonstrate EZ Lynk's eligibility for Section 230 immunity: that EZ Lynk is a provider of an ICS;

that EZ Lynk's ICS has no effect on emissions; that EZ Lynk does not create, sell, or supply the unlawful content of which the government complains; and that the government's claim under Section 203(a)(3)(B) seeks to hold EZ Lynk liable for the content of others. As the trial court noted in its Order, the District of Connecticut ignored the multitude of cases requiring resolution of Section 230 at the earliest possible stage of litigation. JA 119. The government never addresses the lower court's cogent reasons for declining to extend the District of Connecticut's reasoning to this case.

*LeanSpa* is likewise inapposite. There the defendant was an affiliate marketer hired to promote an allegedly fraudulent scheme to enroll customers in recurring charges for spa products. The District of Connecticut was skeptical of the defendant's appeal to Section 230 given plausible allegations of its own deceptive acts and permitted discovery to move forward. *Id.*

Here, however, there is no plausible allegation of any unlawful conduct by EZ Lynk—only by unidentified, third-party users who violate its Terms of Use to distribute delete tunes through its ICS. These allegations support EZ Lynk's defense of Section 230 immunity, which may be considered by the court on a motion to dismiss. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998) (affirming dismissal and noting that "an affirmative defense of official immunity should be resolved as early as possible … and may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint …").

Even if the government could articulate a theory by which it could amend its Complaint (which it failed to do already), that is precisely the type of approach Section 230 is meant to block. *See, e.g.*, *Dyroff*, 934 F.3d at 1098 (creative "plead[ing] around section 230" does not overcome immunity). This Court should consequently reject the government's efforts to re-cast its allegations to plead around Section 230.

## II. EZ Lynk, Based on the Government's Allegations, Meets all Prongs Required for Section 230 Immunity.

### A. Prong 1: EZ Lynk is, as the government allegations make plain, an "interactive computer service."

EZ Lynk falls well within Section 230's broad conception of "interactive computer service." *Ricci*, 781 F.3d at 27; § 230(f)(2) (defining "Interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]"). The Court should not permit the government to now walk back its clear allegations on this issue. Throughout its pleading, the government repeatedly alleges that EZ Lynk's platform allows multiple users to access vehicle computers via EZ Lynk's cloud Internet computer server. JA 13, ¶ 1; JA 25-27, ¶¶ 48, 51-52. Indeed, the Complaint's very first paragraph alleges that the EZ Lynk System is a "cloud computing platform." JA 13, ¶ 1. It also alleges that EZ Lynk is "an internet-based service" that "[t]hird-party companies and individuals create." JA 25-26, ¶¶ 48, 50.

Having no path forward, the government attempts to advance an unsupported theory that Section 230 should be narrowed to exclude interactive computer services that publish software applications, because software that instructs computers allegedly does not communicate with people. This is not the law, ignores established precedent, is contrary to the statute, and makes no sense.

Multiple courts have already rejected such a narrow reading of ICS under Section 230. Application platforms such as Google and Apple are routinely considered ICS's. *See, e.g.*, *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *1 (9th Cir. Mar. 27, 2024). In *Diep*, the Ninth Circuit held that Apple was an ICS where it published an application using computerized commands for payment processing. Under the government's theory, because payment processing software does not facilitate communications between humans, it would not be covered under Section 230. The Ninth Circuit disagreed. There, just as here, the payment processing application fell within the scope of "information" under Section 230's ICS definition. Indeed, "app stores are ***paradigmatic*** interactive computer services," because they allow customers to "locate and download apps[.]" *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 981 (N.D. Cal. 2015) (emphasis added).

The government's brief is silent on the *Coffee v. Google* case, which the trial court properly cited on this issue. There, the plaintiff "argued that Section 230 offers protection only to publishers of 'speech,' and that because the content published" was "video game apps, the statute does not apply." *Coffee v. Google, LLC*, WL

493387, at \*6 (N.D. Cal. Feb. 10, 2021). The court in *Coffee* rejected the 'speech' argument due to an absence of authority, just as the Court should here, and "conclude[d] that Section 230 may apply when the published content is an app." *Id.*

The government also ignores the trial court's observation that multiple app platforms include hardware with software, just like EZ Lynk. Apple makes a physical device and has an app store as well. Facebook is an ICS too, even though it pairs its software publishing platform with hardware. Amazon (e.g. Alexa) and Google do, too. EZ Lynk's inclusion of a physical device with the EZ Lynk Cloud does not remove it from Section 230's scope. *See* JA 122 at fn. 6.

The government cites *LeadClick* to analogize EZ Lynk to LeadClick, which did not publish content but merely served as an affiliate marketer. This analogy is inapposite, as there the court explicitly declined to address whether LeadClick was an ICS, because it failed the other two prongs of the Section 230 analysis. *Fed. Trade Comm'n v. LeadClick Media*, LLC, 838 F.3d 158, 176 (2d Cir. 2016) (noting that the court "did not need to reach [the] issue" of prong 1).

Finally, the government ignores the trial court's cogent explanation that even using the government's own definition of "information," the Complaint alleges that EZ Lynk's platform publishes information. This is because "software is information, albeit presented in code." JA 121. The idea that the nature of the code underlying published software is determinative—whether designed to create a social media app, for instance, or facilitate payment processing—is incorrect and would collapse

Section 230's immunity shield. Any application in Google's or Apple's stores that has a programmatic interface would make the app store susceptible to limitless tort claims. This is not the law.

Even under a statutory construction approach, the text of the statute itself contradicts the government's proposed reading. The statute states that an ICS is "the publisher or speaker of any information." (47 U.S.C. § 230(c)(1).) If "information" means only speech, as the government wishes, then the word "speaker" in the statute is superfluous.

Courts interpret statutes to avoid surplusage. *See Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021) (adopting the "canon against surplusage, which advises courts to interpret a statute to effectuate all its provisions"); *see also Panjiva, Inc. v. U.S. Customs & Border Protection*, 975 F.3d 171, 179 (2d Cir. 2020) (noting that the canon against surplusage assists where one competing interpretation "gives effect 'to every clause and word of a statute.'" (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 93 (2011)).[8]

---

[8] Indeed, the surplusage canon provides yet another basis for rejecting the trial court's *dictum* that the EZ Lynk System's hardware is a car part simply because it has to be "plugged into the car." JA 117. Pass-through tools capable of reprogramming must also be plugged into the car—namely, into its OBD port. If such a tool were deemed a "part," then any reprogramming that passes through the tool might render it a potential "defeat device." As we discuss *infra*, such an interpretation would quickly disrupt the aftermarket tool industry, frustrating the will of Congress who sought to ensure customer choice when it commanded the EPA to issue OBD regulations via Section 202(m), 42 U.S.C. § 7521, of the Act.

Here, Congress used the word "speaker" preceding the word "information" because the information need not be speech. Any other reading would render the word "speaker" mere surplusage. Thankfully, such a curative interpretation exists here: interpreting "information" as encompassing more than just speech.

Likewise inapposite are *Universal City Studios, Inc. v. Corley* 273 F.3d 429 (2d Cir. 2001) and *CFTC v. Vartuli* 228 F.3d 94 (2d Cir. 2000), cases on which the government relies. App. Br., at 25-28. These cases do not analyze Section 230, but rather the First Amendment. The reason the courts limited First Amendment protections to certain types of software is, because otherwise, any software that violated the law could not be regulated.

The situation here is distinct because Section 230 does not immunize all ICS's. It requires the claims treat defendant as a publisher and the content is created by third parties. Consequently, the concern raised in *Corley* and *Vartuli* does not apply. Further, it is not the nature of published third-party software (whether it is programmatic, instructing a computer, or facilitating human communication) that matters for Section 230's purposes. The conduct Section 230 aims to immunize is the publication of that software itself. That is what EZ Lynk does here, by the government's own allegations.

The substance of the software and cloud services at issue in *Corley* and *Vartuli* differs from the EZ Lynk System. Those cases concerned decryption and automatic trading software, not interactive computer services where third parties could publish

38

custom software. Here, the government seeks to declare illegal EZ Lynk's cloud service, where users can publish any kind of content, not just delete tunes (and even delete tunes can differ based on the expression of the user's concept in code). App. Br., at 11 (admitting that "[t]he EZ Lynk Cloud stores calibration software" including but not solely limited to "'delete tunes'"). The government goes beyond alleging that delete tunes, on their own, are illegal—it seeks to craft a theory that a cloud service that has the capability of hosting delete tunes alongside limitless other applications is unlawful. This is precisely what Section 230 is meant to immunize.

The government's theory would restrict Section 230 to be co-extensive with the First Amendment. No court has ruled such a thing, and nothing in the Congressional history cites supports such a theory. Section 230 is intended to immunize developers of ICS's to facilitate innovations. If the First Amendment were sufficient, there would have been no need for Section 230.

Under any reading of the Complaint and application of the statute or law, EZ Lynk is an ICS under Section 230; the government's claims fail to overcome the immunity.

**B.  Prong 2: EZ Lynk meets the second prong of Section 230 because the government seeks to hold it liable for publication of allegedly harmful content.**

To meet Section 230's second prong, EZ Lynk need only establish that the government seeks to hold it liable for its publication of allegedly harmful content.[9] That is the case here.

The government takes the position the claims are against EZ Lynk's system "[a]s a whole," which the government describes as "a physical device to plug into vehicles," a "smartphone app to connect the physical device to the cloud server," and the "EZ Lynk Cloud." App. Br., at 20, 27-28, 33-34, 41-42. This position does not change the Section 230 analysis; indeed, the government's description of the EZ Lynk System describes a quintessential ICS under Section 230.

First, absent the third party delete tunes that EZ Lynk publishes in its cloud, the government has no allegation of any unlawful activity. The Complaint consistently ties the allegedly unlawful activity to the hosted delete tunes, not the device or EZ Lynk's app. Indeed, the Complaint's first paragraph claims that it is the delete tunes EZ Lynk publishes from third parties that enable purported defeating of emissions controls. JA 13, ¶ 1.

The Complaint makes clear that it is only "[o]nce the Auto Agent is connected to the EZ Lynk Cloud" that drivers can "send and receive data and software relating

---

[9] The government mixes its arguments pursuant to prong two of Section 230 with its prong three arguments. EZ Lynk addresses the third prong in section C., *infra*.

to their vehicles' computer systems" that allows them to "share, record, and reprogram" their vehicle. JA 25, ¶ 48. Only the "delete tunes" that others allegedly pass through the EZ Lynk System cause the harm of which the government complains; the EZ Lynk System itself does not. JA 26, ¶ 49. The government admits that "[t]hird-party companies and individuals create delete tunes[.]" JA 26, ¶ 50.

Apart from the delete tunes themselves, the Complaint alleges that the EZ Lynk Forum contributes to making the system unlawful, because of the posts third parties publish on that forum. These allegations amount to a claim that EZ Lynk should be liable for third party content, because EZ Lynk allegedly does not moderate the Forum. JA 14, ¶ 2; JA 31-33, ¶¶ 64-67.

Where a plaintiff makes allegations like these—especially focused on software published in the cloud—the defendant satisfies the second prong for purposes of Section 230. Transmitting (and even arranging) information provided by others is a quintessential publishing function. To hold otherwise would "eviscerate" Section 230 immunity. *See, e.g.*, *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019); *see also Doe v. MySpace Inc.*, 528 F.3d 413, 420 (5th Cir. 2008). Claims that a software app platform failed to "exclude material" that someone sought to place in its cloud-based store "inherently require the Court to treat [the defendant] as the publisher of content provided by another." *Ginsberg v. Google Inc.*, 586 F. Supp. 3d 998, 1005 (N.D. Cal. 2022).

41

The government stretches its argument to claim that even just hosting delete tunes alone is unlawful, but this fails too. Courts have held that where a party "**merely host[s]** the offending work" in the cloud, "but did not publish or alter its content," the accompanying claims "are **clearly pre-empted and prohibited by § 230**." *Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (emphases added).

The trial court carefully considered and rejected the government's attempt to replead its allegations as against the "whole" EZ Lynk System. It observed that the argument that the Complaint "merely seeks to hold the EZ Lynk Defendants accountable for their own misconduct" fails because the government "does not allege that the EZ Lynk Defendants create delete tunes" and "[o]n the contrary . . . [it] expressly alleges that delete tunes are created by 'third-party companies and individuals[.]" JA 123.[10] This Court should reject, as the trial court did, the

---

[10] Further, because the EPA mandates that vehicles support third-party, pass-through reprogramming tools, the government's "as a whole" makes no difference; the regulations clearly support manufacture and sale of pass-through tools capable of reprogramming. *See, e.g.,* 40 C.F.R. § 86.1808-01(f)(17)(iv). Yet the government now argues in its brief to this Court that the mere manufacture and sale of such tools is illegal:

> It is what EZ Lynk does with that third-party software—namely, provide the tools necessary, through the whole EZ Lynk System, to access the software from the EZ Lynk Cloud and install it in vehicles using the Auto Agent and Auto Agent App to defeat emissions controls—that forms the basis of the government's Clean Air Act claim.

government's attempt to "impermissibly modify its Complaint" through the appeals brief. There is no way that the government can morph acts by independent third parties into acts by Defendants.

Likewise, no amount of artful pleading or discovery in this case can alter the fact that the government's claims treat EZ Lynk as a publisher for purposes of Section 230. *See, e.g.*, *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) ("[W]hat matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.").

Reviewing other contexts where a defendant's conduct or system includes multiple components, the Second Circuit has already rejected the government's theory. As this Court held in *Grindr,* where a claim is "inextricably linked to" an "alleged failure to edit, monitor, or remove" content, "it is barred by § 230." *Herrick v. Grindr LLC*, 765 Fed. Appx. 586, 591 (2d Cir. 2019). This was the case even though there were other components of the overall service that purportedly caused harm. *Id.* Here, like in *Grindr*, the government's claims—regardless of how they are styled—are inextricably linked to the idea that EZ Lynk does not monitor or remove delete tunes from its EZ Lynk Cloud, or stop those delete tunes from working with

---

App. Br. at 33. This contrasts with the allegations in its Complaint that EZ Lynk "enables" drivers to install delete tunes.

its mobile application or device. For the same reasons as in *Grindr*, the Complaint treats EZ Lynk as a publisher pursuant to Section 230's second prong.

Other courts agree. In a case involving Apple and allegedly unlawful gambling apps, the plaintiff advanced a theory that Apple provided a system "as a whole" that violated gambling laws, even though all Apple did was supply hardware and an app store—like EZ Lynk. The court declined to adopt the system as a whole framing and ruled that Section 230 immunized Apple from the claims about the gambling apps. *In re Apple Inc. App Store Simulated Casino-Style Games Litigation*, 625 F. Supp. 3d 971 (N.D. Cal. 2022). The court held allegations of Apple promoting gambling apps and working with gambling app developers squarely treated Apple as a publisher of those apps. Rather than looking at the system as a whole, the court analyzed the claims and whether they focused on the components of the system that had to do with publishing activity. Claims about Apple's promotion through hosting in the app store, according to the court, could not be extracted from a theory of publishing. The court held allegations that Apple promoted gambling apps and worked with gambling app developers squarely treated Apple as a publisher of those apps. Section 230, consequently, immunized Apple from the claims. The same is true here.

In another case decided this year involving a "voicemail delivery system," Section 230 immunized the defendant because the government's claims focused on the content of the voicemails passing through the system. *United States v. Stratics*

*Networks, Inc.*, 721 F. Supp. 3d 1080, 1106 (S.D. Cal. 2024). The government in *Stratics Networks*, like the government here, argued that the problem was with the system as a whole. This failed. "Deliver[y]" of calls was not enough to overcome Section 230, and the court ruled that the "claims [were] not content-neutral" but instead treated the defendant like a publisher. *Id.*

The government's theory would narrow the concept of publisher to exclude any system that includes a hardware component alongside a cloud service. This runs counter to controlling precedent that "publisher" under Section 230 should be given broad interpretation. *See, e.g., Force* ("The courts' generally broad construction of Section 230(c)(1) in favor of immunity 'has resulted in a capacious conception of what it means to treat a website operator as the publisher . . . of information provided by a third party.'") 934 F.3d at 65. Such an approach would render countless products used in everyday life—mobile phones, smart speakers, headsets—liable for content published by the cloud component of their system. This would open the floodgates of litigation against every cloud-based device, squelching innovation.

The government claims that the trial court adopted a "but-for" test for whether EZ Lynk is a publisher, but this is incorrect. The trial court simply reviewed the government's claims and properly observed that they were inextricably tied to EZ Lynk's editorial activity—hosting but not removing allegedly harmful delete tunes. *See* JA 110.

The government's citations for their but-for argument all support EZ Lynk's position. In *Henderson*, the Fourth Circuit observed that where the claim focuses on the *nature* of the content itself, it treats the defendant as a publisher for purposes of Section 230. *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 122 (4th Cir. 2022). Here the government concedes that not all content on EZ Lynk's cloud is unlawful, but only certain delete tunes. This ends the inquiry.

*HomeAway.com* is no help to the government either. There, the Ninth Circuit focused on whether the "duty" invoked by the claim "would necessarily require an internet company to monitor third-party content" to evaluate whether the claim treated a defendant as a publisher. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019). That is exactly what the government's theory does here—it would impose a duty on EZ Lynk to monitor and stop delete tunes from being uploaded into the EZ Lynk Cloud.

*Roommates* is fundamentally distinct too. There, the service "force[d]" its users to "disclose" information through "unlawful questions" that were coded into its website—functionally requiring illegal housing discrimination. *Roommates.com*, 521 F.3d at 1166-7. EZ Lynk does not require that third parties post any unlawful delete tunes on its cloud service.

All the other cases the government relies on for its prong two support EZ Lynk as well. *LeadClick*, for instance, held that claims under the Federal Trade Commission Act did not treat an affiliate marketing company that actively promoted,

advertised, and itself engaged in deceptive conduct as a publisher. There, LeadClick itself hired false news sites to promote fake spa products. The analogue to LeadClick is not EZ Lynk, but rather developers of the allegedly unlawful delete tunes themselves.[11] Neither does *Internet Brands* help the government. There the claim had nothing to do with published content, but rather the company's failure to warn a victim about a scheme to lure them into a fake modeling gig.

Here, however, the claim is inextricably—and indeed, solely—tied to EZ Lynk's publishing of delete tunes, not any other conduct unrelated to EZ Lynk's ICS. *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016). The *GG* case too found that Salesforce was not a publisher because the claims alleged Salesforce helped Backpage "find more sex-trafficking contractors" through myriad consulting-style services and conduct, including streamlining Backpage's business practices and enabling it to scale operations. *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 567 (7th Cir. 2023). Here, however, the allegations are about EZ Lynk's alleged publishing of the delete tunes. Finally, the *Erie Insurance* case offers no help to the government, as there the claim was a product defect claim based on selling a defective product, rather than publishing anything. *Erie Insurance Co. v. Amazon,.com, Inc.*, 925 F.3d 135 (4th Cir. 2019).

---

[11] This is only to the extent the government can show the alleged delete tunes themselves are unlawful, which is in question, although not an issue the Court need reach.

The government's claims in this case center on EZ Lynk's making third-party content available through its cloud service. This is quintessential publishing activity that Section 230 protects. The Court should affirm on these grounds, because EZ Lynk satisfies the second prong of Section 230 and is immunized from the government's defeat device claim.

**C.  Prong 3: EZ Lynk meets the third prong of 230 because third parties, not EZ Lynk, created the delete tunes at issue.**

The government cannot overcome Section 230's third prong because it explicitly and repeatedly alleges that the content at issue—delete tunes—is created by third parties, not EZ Lynk.  JA 26-27, ¶¶ 50-52; JA 30, ¶ 59; JA 38-39, ¶ 84. The government's attempt to remedy this fatal problem relies on misconstruing EZ Lynk's protected publisher activities as material contribution to the creation of delete tunes.

Specifically, the Complaint alleges that EZ Lynk provided technical support to its customers, allegedly hosted a forum where some customers discussed delete tunes and had some workers who "liked" certain third-party posts about delete tunes. JA 31-32, ¶¶ 64-66. The trial court correctly rejected this theory as facially inadequate.

As a threshold issue, the government fails to grapple with the fact that EZ Lynk expressly prohibits third-party software that "[p]romote[s] any illegal activity,

or advocate[s], or promote[s] or assist[s] with any unlawful act."[12] JA 52. This alone defeats the government's argument, because EZ Lynk's "Content Standards" forbid delete tunes. The government does not and cannot allege that EZ Lynk bundles the EZ Lynk System with delete tunes. JA 31, ¶ 63.

Further, not only do delete tunes run counter to EZ Lynk's Content Standards, but the EZ Lynk System itself is consistent with EPA mandates that vehicles be programmable. The EZ Lynk Auto Agent is a "pass-through reprogramming tool" that merely acts as a bridge between a user's computer or the EZ Lynk Cloud, which stores third-party data related to vehicle software updates or adjustments, and a vehicle's electronic systems. *See* 40 C.F.R. § 86.1808-01(f)(2)(ii)(G), (f)(17)(iv). This is the "quintessential" neutral tool—a pass-through reprogramming tool—for purposes of Section 230. *Id.*; *see also Daniel v. Armslist, LLC*, 926 N.W.2d 710, 721 (Wis. 2019).

Where users "misuse" a platform's "neutral tool," as alleged here, failure to moderate or stop such misuse does not materially contribute to unlawful conduct for purposes of Section 230. *See, e.g.*, *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019); *see also Daniel*, 926 N.W.2d at 721; *Force*, 934 F.3d at 63-64.

All the government's manufactured "collaboration" theories fail.

---

[12] EZ Lynk placed its "Terms of Use" in the record of the proceedings below, appending them with an accompanying affidavit to its Motion to Dismiss. *See* Entries No. 42, 44, and 45. JA 7-8.

**Testing and customer support.** Even accepting the Complaint's allegations as true for this appeal, the government's testing and support theories do not overcome Section 230's immunity shield.

With respect to testing, all the government alleges is that a delete tunes developer—a third party unaffiliated with EZ Lynk—previewed the EZ Lynk System before its launch. JA 29, ¶¶ 57, 58. Previewing does not imply development of illegal content. The trial court declined to credit such legal conclusions couched as factual allegations, as should this Court. *See, e.g.*, *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). The government's testing allegation flows only one way. It alleges that a delete tunes developer may have tested the EZ Lynk System, but not the converse—that EZ Lynk collaborated with these technicians in the development of their third-party delete tunes. The Complaint "does not include any posts that clearly state," or even "imply that an EZ Lynk customer service representative helped a driver defeat emissions controls." JA 125. Because the government cannot allege EZ Lynk materially contributed to "what made content unlawful," and its "conduct was neutral with respect to" the delete tunes themselves (which is the allegedly harmful part of the content), Section 230 immunizes it from liability. *Id.* (citing *Accusearch*).[13]

---

[13] Plaintiff's *Fox News* and *Arista Records* citations are far afield of this case. Neither relate to Section 230. *Fox News* concerned allegations that Fox News caused emotional distress based on its hiring of a private investigator to infiltrate the family of a slain political staffer. *Arista* concerned a motion to quash and allegations that

The customer support allegations are likewise insufficient. The trial court reviewed all the Complaint's allegations alleging technical support and found "no allegation that anyone affiliated with the EZ Lynk Defendants helped the driver install the emissions-deleting software." The communications "fall far short of alleging direct and material contributions to illegal activity for purposes of nullifying immunity under Section 230[.]" JA 123 (citing *Force*, 934 F.3d at 68). Such "guilt-by-association allegations fail to raise more than a sheer possibility that the EZ Lynk Defendants did anything untoward[.]" *Id.* (citing *Iqbal*, 556 U.S. at 678).

Less than three months ago, the Eastern District of New York rejected a similar theory advanced by the government against eBay in a defeat device case, finding that eBay's "administrative and technical support" is protected by Section 230 and "does not materially contribute to the content's alleged unlawfulness." *United States v. eBay Inc.*, 2023 WL 4350523, at *10 (E.D.N.Y. Sept. 30, 2024).

If providing customer support or permitting users to test an ICS defeated Section 230 protection, then no Internet or mobile device company would be able to function. This would "eviscerate" Section 230, as the lower court observed. JA 124.

**Online forum.** The government alleges EZ Lynk is a collaborator because it allegedly "maintain[ed] the EZ Lynk Forum, a Facebook group" and because

---

defendants themselves pirated music. These are nowhere near the lightweight allegations of EZ Lynk's providing standard technical support to its users. *See Rich v. Fox News Network,* LLC, 939 F. 3d 112 (2d Cir. 2019); *Arista Records LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010).

unidentified alleged employees were "reading and 'loving' posts[.]" JA 31-33, ¶¶ 64, 67. This reflects quintessential acts of a publisher. Even "assist[ing] in the drafting of a product listing" or "actively market[ing] the listings" is not enough to materially contribute to sales of defeat devices. *See eBay Inc.*, 2023 WL 4350523, at *10 (E.D.N.Y. Sept. 30, 2024); *Chi. Laws.' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671-72 (7th Cir. 2008) (allegations that a platform "caused" a post, let alone liked it, are insufficient to overcome Section 230). If algorithmically promoting content does not constitute material contribution, liking content certainly does not. *Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) (citing *Roommates*, *Carafano*, *Grindr*).

Courts consistently reject claims that "awards," "stars," or similar labels "directly and materially contribute" to harmful content. *See, e.g.*, *Doe v. Reddit, Inc.*, 2021 WL 5860904, at *5 (C.D. Cal. Oct. 7, 2021), aff'd *sub nom*. *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022), cert. denied *sub nom*. *Doe v. Reddit, Inc.*, 143 S. Ct. 2560 (2023) (Reddit's provision of "Karma awards," was not a material contribution to illegal website content); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (Yelp's stars did not materially contribute to unlawful content); *see also Dyroff*, 934 F.3d at 1099 (creating forums for selling drugs not enough to overcome Section 230).

Cloud platforms that host computer files and apps, like the EZ Lynk System, are not co-developers of those computer files and apps for purposes of Section 230.

*See, e.g.*, *Coffee v. Google, LLC*, No. 20-CV-03901-BLF, 2021 WL 493387, at \*7–8 (N.D. Cal. Feb. 10, 2021); *see also In re Apple Inc. App Store Simulated Casino-Style Games Litigation*, 625 F. Supp. 3d 971, 993 (N.D. Cal 2022). The immunity applies even where the platform has knowledge that its cloud service hosts illegal apps, or when it "amplif[ies] and direct[s] users to" the allegedly illegal apps. *Id.* After all, one purpose of Section 230 is to shield the platform for claims based on its "failure to intervene[.]" *Coffee*, 2021 WL 493387 at \*7-8.

When a situation is a close call, which this one is not, courts construe "material contribution" narrowly. Ruling otherwise could "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Id.* at \*8 (citing *Roommates*).

## III. Even Absent 230 Immunity, the Government Does Not and Cannot Plead a Violation under the Clean Air Act.

Independent of the dispositive protections afforded Defendants under Section 230, the government's Complaint fails on other grounds. At the trial court level, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because the government does not and cannot sufficiently plead the elements of a *prima facie* claim under Section 203, which requires that defendants:

> [1] manufacture or sell, or offer to sell, or install, any *part or component* intended for use with, or as a part of, any motor vehicle or motor vehicle engine, [2] where a *principal effect* of the part or component is to bypass, defeat, or render inoperative [vehicle emissions controls installed under the Act's Title II (mobile source) regulations] and [3]

where the person *knows or should know* that the part or component is being offered for sale or being installed for such use....

42 U.S.C. § 7522(a)(3)(B) (emphasis and numerals added).

Although the district court suggested that the government had pled a *prima facie* Section 203 claim, the lower court's curt discussion constitutes *dicta* and should be accorded less weight as it is "not essential to the Court's holding." *See Willis Mgmt. (Vt.), Ltd. v. United States*, 652 F.3d 236, 243 (2d Cir. 2011)(a statement "not essential to the Court's holding . . . is dictum that is not binding.") *Ynfante v. Google LLC*, 2023 U.S. Dist. LEXIS 96074, *10 (S.D.N.Y. June 1, 2023) ("Because this Court has determined that the plaintiff's claims are barred by Section 230 of the CDA, it need not address the merits of the defendant's arguments that the plaintiff's Complaint fails to state a claim."). Indeed, the district court's entire analysis of the first element of Section 203(a)(3)(B) comprises less than two sentences, consisting of the bare observations that "'part' is a capacious term" and that the EZ Lynk hardware must be plugged into car. JA 117. Such an analysis would sweep into Section 203's purview anything that plugs into a car: from USB power cords to, critically here, aftermarket pass-through reprogramming tools.

As to each of the three required elements, the government's Complaint is facially inadequate. In incorrectly suggesting that the government adequately alleged the essential elements, the district court disregarded its own finding that "the specific factual allegations in the Complaint support Defendants' assertion that the EZ Lynk

System is a 'neutral tool' that, by itself 'has **no** effect' on emissions" JA 109 (emphasis in original). Given that the EZ Lynk System is a pass-through tool with no effect on emissions, it follows that the allegations do not support a Section 203 claim.

### A.    Part or Component.

The EZ Lynk System is comprised of three elements, none of which is "part or component" under the Act. Tellingly, the government never even alleges the EZ Lynk System is a part or component. The phrase "part or component" only appears in the Complaint a handful of times, and only as part of the recitation of Section 203 of the Act. *See* JA 13-14, ¶¶ 1; JA 21, ¶ 32; JA 23, ¶ 38; JA 25, ¶ 47; JA 140, ¶ 92; and ¶ a. on JA 43. It is not enough to plead that Defendants manufacture and sell the EZ Lynk System without alleging the system is a motor vehicle part or component.

In addition, the pleading does not contain allegations sufficient to infer that conclusion. With no statutory definition of "part" or "component" provided by the Act, the plain meaning of the words control. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("it is axiomatic that the plain meaning of a statute controls its interpretation."). Here, the plain meaning the words indicates that each references a portion of a unit or whole—meaning, portions of the motor vehicle or engine. "Part" is defined as "one of the often indefinite or unequal subdivisions into which something is . . . divided and which together constitute the whole." Part, MERRIAM-WEBSTER.COM (Dec. 9, 2024), https://www.merriam-webster.com/dictionary/part. A

"component" is defined as "a constituent part," Component, MERRIAM-WEBSTER.COM (Dec. 9, 2024), https://www.merriam-webster.com/dictionary/component, while the term "constituent" is further defined as "serving to form, compose, or make up a unit or whole," Constituent, MERRIAM-WEBSTER.COM (Dec. 9, 2024), https://www.merriam-webster.com/dictionary/constituent#h2. The government does not plead (nor can it) that the EZ Lynk System is a portion of a motor vehicle or motor vehicle engine.

Unable to describe the EZ Lynk System as a part or component, the government alleges the EZ Lynk System is a "product" or "device"; that the AutoAgent is an "electronic" or "physical" "device"; the App is a "smartphone application"; and the cloud is a "computing platform" or "internet based service." The specific allegations the district court identifies as support for its *dicta* that the EZ Lynk System is a part or component are that "the EZ Lynk System consists of the Auto Agent device, the EZ Lynk Cloud, and the Auto Agent App" which "plugs into a vehicle's ODB port" that "once …connected to the EZ Lynk Cloud through the Auto Agent App, drivers are able to send and receive data and software relating to their vehicles' computer system." JA 116-117. None is an allegation that the EZ Lynk System is a part or component of a motor vehicle or motor vehicle engine. However, with these allegations in mind, the district court determined "part" was a "capacious" term and that since the EZ Lynk System's "hardware has to be plugged into the car," the EZ Lynk System is a part. JA 117.

Although the district court commented that "part" is a "capacious" term (JA 117), part is not "capacious" enough to contain the district court's interpretation. If it were, phones, tablets, laptops, and GPS devices would all be "parts or components" of a motor vehicle simply because they could be plugged into a car, and no one considers these accessories to be car parts—even when plugged into the car.

The trial court itself recognizes that the EZ Lynk System *is* a tool—and a neutral tool that has no effect on emissions. JA 109. Section 202(m) of the Act, 42 U.S.C. § 7521(m) and the regulations promulgated thereunder at 40 C.F.R. § 86.1808 require automakers to equip all new light duty vehicles and light duty trucks sold America with OBD systems, that the OBD systems be capable of reprogramming, and that the automaker provide information sufficient to enable aftermarket tools to access the reprogramming functions to troubleshoot and reprogram vehicle computers.

The government's attempted reliance on the trial court's *dicta* that "'part' is a capacious term" is misplaced, regardless of how capacious or narrow the term. JA 117, App. Br., at 23. As much as the trial court endeavors to give meaning to the term "part" in Section 203(a)(3)(B), it gives no consideration to the word "tool" as used in Section 202(m) of the Act, 42 U.S.C. 7521(m).

Section 202(m) requires all light duty vehicles and light duty trucks to be equipped with OBD systems capable of reprogramming. Further, OEMs must supply

equipment and tool companies with necessary information to develop pass-through reprogramming tools. This facilitates the creation of aftermarket pass-through tools for reprogramming purposes. *See generally,* 40 C.F.R. Part 86.

Indeed, an excerpt from the preamble to the Information Availability Rule implementing Section 202(m) reads almost like an advertisement for the EZ Lynk System:

> [OEMs must] make full text emissions-related service information and training information available via the World Wide Web; ***provide equipment and tool companies with information that allows them to develop equipment with pass-through reprogramming capabilities***; make available enhanced diagnostic information to equipment and tool companies; make available OEM-specific diagnostic tools for sale to interested parties and; make available additional OBD technical information that OEMs must provide.

Information Availability Rule at 38428. An express purpose of this rule is to "ensure that aftermarket service and repair facilities have access to the same emission-related service information, in the same or similar manner, as that provided by OEMS to their franchised dealerships." *Id.* at 38429. Further, the regulations require that manufacturers supply the technical information and specifications "to equipment and tool companies to develop aftermarket pass-through reprogramming tools." 40 C.F.R. § 86.1808-01(f)(17)(iv). Indeed, if the trial court were correct that products

that plug into cars are car "parts" within the meaning of Section 203(a)(3)(B), very few, if any, pass-through tools would ever be created.[14]

At its core, the government's position is that the EZ Lynk System is unlawful partly because it plugs into a vehicle and permits reprogramming of vehicle computers via their OBD system. This position is untenable considering the obligations set forth in Section 202(m) of the Act and its implementing regulations, which together require that OBD systems be capable of reprogramming and that automakers provide information sufficient to allow creation of independent, third-party scan tools that can troubleshoot vehicle problems and reprogram their computers.

## B.    Principal Effect.

The government also must allege that the "part or component" has "a principal effect . . . to bypass, defeat, or render inoperative any [emission control] device or element of design installed on or in a motor vehicle . . . ." 42 U.S.C. § 7522(a)(3)(B). The government's allegations do not satisfy the "principal effect" prong. While the district court intimated otherwise in *dicta*, its cursory reasoning recognizes that "the specific allegations in the Complaint support Defendants' assertion that the EZ Lynk

---

[14] Indeed, the trial court's *dictum* would pose an insurmountable hurdle to creation of OEM reprogramming tools, thus thwarting Section 202(m)'s purpose and rendering motor vehicles incapable of being reprogrammed to address, for example, flawed or malfunctioning emissions control software and hardware.

System is a 'neutral tool' that, by itself 'has **no** effect' on emissions. JA 109. (Emphasis in original.)

The government merely parrots the Act through quotes and paraphrasing (*see, e.g.*, JA 21, ¶ 32; JA 23, ¶ 40). This is not enough. *Western Capital Design, LLC v. N.Y. Mercantile Exch.*, 25 Fed. Appx. 63, 65 (2d Cir. 2002) (dismissing case where "complaint fails to adequately allege" necessary elements because "allegations parrot the law without providing any supporting factual allegations."). The government also repeatedly refers to claimed bad acts of unidentified others who allegedly utilize the EZ Lynk System with tunes EZ Lynk did not create, sell, or provide. *See, e.g.*, JA 26-27, ¶¶ 49-52; JA 30, ¶ 59. As the district court found, "the Complaint is clear that it is the so-called delete tunes that are capable of defeating Emission-Related Elements of Design" not the EZ Lynk System. JA 109. The EZ Lynk System has *no effect* on emissions controls or any other vehicle system.

The district court also recognized that the government did not allege that any of the Defendants participated in the creation of delete tunes (*id.*), nor that the EZ Lynk System comes with any delete tunes installed. Rather than the operation of the EZ Lynk System on its own, the government focuses on the contention that it "enable[ed]" independent, unnamed actors "across the United States to use the EZ Lynk System to 'delete' emissions controls." JA 14, ¶ 2. However, the statute does not prohibit the manufacture and sale of pass-through tools with a lawful function.

Indeed, in seeking to preserve customer choice, EPA's own regulations **compel** development of third-party pass-through tools with reprogramming capability.

The district court acknowledged that it is not "illegal to tinker with the manufacturer's design of your car, or to make, sell, or install a device that enables people to tinker with their cars." JA 106. The EZ Lynk System simply provides wireless connectivity to vehicle OBD systems. The alleged acts of unnamed others cannot be attributed to EZ Lynk, no matter how strenuously the government attempts to move the statutory goalposts.

If the intervening acts of other parties using other products are necessary to accomplish an objective, that objective is not the "principal effect" of the EZ Lynk System. In finding the allegations adequate to show principal effect, the district court set forth its reasoning in less than one paragraph, stating that "in particular" the two allegations evidencing a prohibited principal effect are that "EZ Lynk has enabled thousands of drivers across the United States to use the EZ Lynk System to 'delete' emissions controls…" and that "many of the tunes available for use with the EZ Lynk System are capable of defeating emissions controls." JA 105, JA 117 (internal quotations omitted). However, these allegations at most show only an indirect effect requiring intervening events and products, not any principal effect.

On appeal, the government now attempts to recast them. This is inappropriate. *See Ynfante,* 2023 WL 2023 WL 3791652, at *3."3 And in a new twist, the government, seeking to tie Defendants to delete tunes, entitles a whole section of

their brief "EZ Lynk Participates in the Creation of Delete Tunes and Encourages Their Use on the EZ Lynk System." App. Br., at 11. The government cites paragraph 57 of the Complaint as support, but that paragraph includes *only* a statement from a technician identified *only* as "GDP Tuning" "not[ing] on its Facebook page" that it worked with unnamed "guys at EZ Lynk" when the EZ Lynk System was being developed. JA 29, ¶ 57. There is no mention of developing delete tunes. *Id.* Even if the delete tunes are credited as having a prohibited principal effect, there are no allegations EZ Lynk created them or provided them with the EZ Lynk System.

## C.    Know or Should Know.

Section 203 also requires the government plead Defendants "know[] or should know such part or component is being offered for sale or installed" to bypass, defeat, or render inoperative emissions controls. 42 U.S.C. § 7522(a)(3)(B). The government fails to satisfy the knowledge prong. In conclusory fashion, at the Paragraph 96 of its Complaint, the government vaguely alleges "Defendants knew or should have known that the EZ Lynk System was being manufactured, offered for sale, sold, and installed for such use or put to such use." JA 40, ¶ 96.

However, the Complaint does not allege any of the individual Defendants (nor any senior EZ Lynk personnel) knew or should have known the EZ Lynk System was allegedly being used for the *defeat emissions.* Instead, the Complaint focuses squarely on the actions and social media posts of third parties and the observance of

those posts by nameless, unidentified "representatives" and "technical support representatives" of EZ Lynk.

In its Opinion, the district court relies on allegations concerning third party social media posts, finding that "social media posts in the Complaint are useful to show what EZ Lynk knew or should have known." JA 126. The Court cites the Complaint's allegation that "[h]undreds of posts on the EZ Lynk Forum, the Facebook group that EZ Lynk allegedly maintains, and numerous posts on numerous other sites, discuss using the EZ Lynk System to defeat emission controls." JA 27-28, ¶¶ 53, 54; JA 31-32, ¶¶ 64, 66; JA 34-35, ¶¶ 71, 72; JA 36-37, ¶ 77. However, nowhere does the Complaint allege that any of the Defendants have engaged with any of the posts on any of the sites referenced other than the Facebook forum (where *only* unnamed "representatives" are alleged to have interacted with a handful of posts). With respect to the EZ Lynk Forum, the Complaint does not allege that any of the Defendants (besides EZ Lynk, through unnamed "representatives" vaguely "administer[ing]" and "monitor[ing]" it) were involved in the forum. Instead, the Complaint vaguely, and in conclusory fashion, alleges that unidentified "representatives" "maintain" and "administer" a Facebook group and that these unnamed representatives "loved" or "liked" forum posts made by unnamed third parties a total of four times. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

The Complaint also alleges an unnamed "EZ Lynk technical support representative" made non-substantive comments on two posts by third parties. JA 32-33, ¶¶ 66-67. The Complaint fails to identify any alleged "representatives" involved in the forum. The Complaint also acknowledges at least some tech support and some of the technical support representatives were provided by a third-party company: activity by those individuals is not attributable to EZ Lynk. Indeed, none of these alleged employees or third parties are high ranking enough in the company to impute their knowledge to the Defendants. *See United States ex rel. Vavra v. KelloggBrown & Root, Inc.* 848 F.3d 366, 374 (5th Cir. 2017). Indeed, the government only identifies "mere employee[s]"—unnamed "representatives"— whose authority and responsibility are not alleged to be of the kind required to impute knowledge to EZ Lynk.

As to the allegations regarding the non-party posts on various message boards and social media sites, the Complaint does not contain any allegations that Defendants or unnamed representatives monitored, promoted, engaged with, or managed them at all. These postings are insufficient to impute knowledge to the Defendants. *See Rosi v. Aclaris Therapeutics, Inc.*, 2021 U.S. Dist. LEXIS 59670 at *41-42 (S.D.N.Y. Mar. 29, 2021) (dismissing claim where postings constituted "a handful of anecdotal reports.").

## **CONCLUSION**

We respectfully ask the Court to affirm the district court's well-reasoned decision dismissing the Complaint on Section 230 grounds. The key allegations entitling EZ Lynk to immunity are not in dispute.

- The government's own allegations demonstrate that the EZ Lynk System constitutes an "information service [or] system . . . that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet." Section 230(f)(2), 47 U.S.C. § 230(f)(2). The EZ Lynk System is comprised of hardware, a smart phone application, and the EZ Lynk Cloud, which together connect vehicle owners, technicians, and others via the Internet, readily meeting Section 230(f)(2)'s definition of an "interactive computer service."

- "Delete tunes," not the EZ Lynk System, adversely affect emissions controls, as the government alleges. The government's Section 203(a)(3)(B) claim would treat that content as EZ Lynk's, even though the government acknowledges that third parties create this content, not EZ Lynk.

The Complaint establishes that EZ Lynk is entitled to Section 230 immunity, and the government's Complaint was rightly dismissed. Due to the nature of Section 230 immunity, the district court did not need to reach any other issue in the case, and neither does this Court.

An additional ground compels affirmation of the lower court's ruling: the government failed to state a claim for violation of Section 203(a)(3)(B) of the Act, despite the trial court's *dicta* to the contrary. The government does not and cannot adequately allege Defendants manufacture, sell, or offer to sell a part or component whose principal effect is to bypass or defeat emissions controls and knew or should have known that the EZ Lynk System was being offered for sale or being installed for such use, the Court should affirm the trial court on the alternative ground that the government has failed to state a claim under the Act upon which relief can be granted.

Despite the trial court's suggestion that the term "part" is a capacious term, it is not broad enough to encompass the EZ Lynk System, which is a pass-through reprogramming tool (scan tool) in accordance with Section 202(m) of the Act and its implementing regulations. Indeed, the trial court failed utterly to acknowledge the necessity of aftermarket reprogramming tools under the Act. If the trial court's *dicta* were to prevail, aftermarket tools would quickly disappear from the marketplace.

The EZ Lynk System constitutes a pass-through reprogramming tool that has no effect, let alone a principal effect, on emissions. While certain content may have an adverse effect on emissions, the government's gripe is with makers of that content, not with EZ Lynk.

Regarding knowledge, the government fails to allege that EZ Lynk knew anything other than what engineering judgment discloses: that the EZ Lynk System is a pass-through reprogramming tool. What third parties elect to pass through it is not attributable to EZ Lynk.

Accordingly, we ask that this Court affirm the trial court's determination that the EZ Lynk Appellees are entitled to Section 230 immunity and that the Complaint was properly dismissed on that basis.

Dated: December 13, 2024        Respectfully submitted,

Hal S. Shaftel                Bernadette M. Rappold
Adam Kirschbaum        1717 Arch Street, Suite 400
One Vanderbilt Avenue      Philadelphia, PA 19103
New York, NY 10017        202.412.3580
212.8901.9200             rappoldb@gtlaw.com
shaftelh@gtlaw.com
kirschbauma@gtlaw.com

Christopher J. Neumann
1144 15th Street, Suite 3300
Denver, CO 80202
303.572.6551
neumannc@gtlaw.com

ATTORNEYS FOR DEFENDANTS-APPELLEES,
EZ LYNK SEZC, PRESTIGE WORLDWIDE SEZC,
THOMAS WOOD & BRADLEY GINTZ

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 13,979 words in this brief.

Hal S. Shaftel
Adam Kirschbaum
One Vanderbilt Avenue
New York, NY 10017
212.801.9200
shaftelh@gtlaw.com
kirschbauma@gtlaw.com

Christopher J. Neumann
1144 15th Street, Suite 3300
Denver, CO 80202
303.572.6551
neumannc@gtlaw.com

Bernadette M. Rappold
1717 Arch Street, Suite 400
Philadelphia, PA 19103
202.412.3580
rappoldb@gtlaw.com