# 24-2386

## United States Court of Appeals
### For the Second Circuit
**Docket No. 24-2386**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

—v.—

EZ LYNK, SEZC, THOMAS WOOD, BRADLEY GINTZ,

*Defendants-Appellees,*

PRESTIGE WORLDWIDE SEZC,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**DEFENDANTS-APPELLEES' PETITION FOR REHEARING AND
PETITION FOR REHEARING EN BANC**

Elliot H. Scherker
GREENBERG TRAURIG, P.A.
333 Southeast Second Avenue, Ste. 4400
Miami, Florida 33131

Hal S. Shaftel
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017

Bernadette Marie Rappold
GREENBERG TRAURIG, LLP
2101 L Street NW, Ste 1000
Washington, DC 20037

Christopher Neumann
1144 15th Street, Suite 3300
Denver, Colorado 80202

## DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees EZ Lynk SEZC, and Prestige Worldwide SEZC, by and through their undersigned counsel, hereby certify as follows:

- Louisiana corporations, Franklin Specs, Inc. (Franklin) and Cavologies Enterprises, Inc. (Cavologies), each own 50% of the shares in EZ Lynk SEZC, which is a Special Economic Zone Company organized under the laws of the Cayman Islands.

- Louisiana corporations, Gutenberg Presses, Inc. ("Gutenberg") and Globepaw Systems, Inc. (Globepaw), each own 50% of the shares in Prestige Worldwide SEZC.

Franklin, Cavologies, Gutenberg, and Globepaw are not publicly held corporations.

Dated: October 3, 2025

/s/ Elliot H. Scherker
Elliot H. Scherker

i

## TABLE OF CONTENTS

<u>**Page**</u>

DISCLOSURE STATEMENT ............................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

INTRODUCTION AND FEDERAL RULE OF APPELLATE PROCEDURE
STATEMENT REGARDING PETITION FOR REHEARING EN BANC ............1

ARGUMENT ...................................................................................................5

I.      SECTION 230 IMMUNITY. .........................................................5

II.    THE PANEL OPINION CREATES INTRA-CIRCUIT CONFLICT.............7

III.   THE PANEL OPINION CREATES INTER-CIRCUIT CONFLICT. .........10

CONCLUSION .............................................................................................15

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................16

CERTIFICATE OF SERVICE .........................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) ...........................................................13

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .........................................................11

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................*passim*

*Fed. Trade Comm'n v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) .........................................................4

*Fed. Trade Comm'n v. LeadClick Media, LLC*,
    838 F.3d 158 (2d Cir. 2016) .....................................................*passim*

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) .......................................................*passim*

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .......................................................12, 13

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...........................................................11

*Small Just LLC v. Xcentric Ventures LLC*,
    873 F.3d 313 (1st Cir. 2017)............................................................12

*United States v. EZ Lynk, SEZC*,
    149 F.4th 190 (2d Cir. 2025) ....................................................*passim*

**Statutes**

42 U.S.C. § 7522(a)(3)(B) ...................................................................2

47 U.S.C. § 230..................................................................................1

47 U.S.C. § 230(b)(2)..........................................................................5

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

47 U.S.C. § 230(c)(1)......................................................................5, 6

## INTRODUCTION AND FEDERAL RULE OF APPELLATE PROCEDURE STATEMENT REGARDING PETITION FOR REHEARING EN BANC

This case presents an important question: whether this Court should adopt a lower pleading standard for "material contribution" under Section 230 of the Communications Decency Act (CDA), 47 U.S.C. § 230—which cannot be reconciled with the pleading standard adopted by prior decisions of this Court and other Circuits. That standard states that, where, as here, "material contribution" is alleged "by inference," Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008).

The panel opinion would significantly lower the material contribution pleading standard, depriving every interactive computer service (ICS) of Section 230 immunity based on even attenuated inferences drawn from vague and ambiguous allegations, such as those the government relies on here. If embraced, this new standard would create a situation in which not only Defendants-Appellees (collectively, EZ Lynk), but every ICS provider, will have to fight costly and protracted legal battles without Section 230's protection.

Left unaltered, the panel opinion constitutes a significant departure from this Court's exacting material contribution standard, as set forth in *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019), and *Fed. Trade Comm'n v. LeadClick Media,*

*LLC*, 838 F.3d 158, 173 (2d Cir. 2016), and invites a flood of claims that will attempt to creatively plead around Section 230 immunity. Congress's purpose in enacting Section 230 was to enable platforms to innovate without having to defend countless lawsuits based on the unlawful conduct of third parties who publish on those platforms. As currently formulated, unfortunately, the panel's decision ensures exactly that—a wave of artfully pled speculative platform liability claims that will shut down online innovation.

The Environmental Protection Agency (EPA) sued EZ Lynk under Section 203(a)(3)(B) of the Clean Air Act (the CAA), 42 U.S.C. § 7522(a)(3)(B), alleging that EZ Lynk sold an illegal "defeat device," *i.e.*, a product with a "principal effect" of enabling drivers to defeat vehicle emissions controls via computer codes (known as "delete tunes") that are created and sold exclusively by third parties. The Complaint makes it clear that EZ Lynk provides a wireless interface, smartphone application, and the EZ Lynk Cloud (collectively, the EZ Lynk System), which connects vehicle owners and technicians with each other and to onboard diagnostic (OBD) ports and systems.

But the EPA does *not*, and cannot, allege that EZ Lynk creates, sells, requires, develops, or installs *any* content, unlawful or not, that third-party users may transmit via the EZ Lynk System to a vehicle's OBD ports. Rather, the Complaint references a handful of social media acknowledgments, such as "likes" from unnamed alleged

2

representatives, online discussions about the EZ Lynk System on a Facebook platform that EZ Lynk neither owns nor operates, and non-parties' statements on which EZ Lynk—like every platform provider—previewed its platform to developers. *Nowhere* does the Complaint allege that EZ Lynk provided instruction, templates, or guidance to teach others how to create software that tampers with emissions controls.

On EZ Lynk's motion to dismiss, the district court ruled that Section 230, which was enacted to protect ICS providers from liability for third-party content, barred the EPA's claim because, as alleged in the Complaint, the "delete tunes" are created by third parties and the "EZ Lynk System is a 'neutral tool' that, by itself, 'has no effect' on emissions." JA 109, JA 120. But the panel opinion holds that "allegations in the Complaint support an inference that [EZ Lynk] 'directly and materially contributed to' the creation of delete tunes." *United States v. EZ Lynk, SEZC*, 149 F.4th 190, 199-200 (2d Cir. 2025) (quoting *Force*, 934 F.3d at 68). According to the panel opinion, the EPA's limited allegations of EZ Lynk's conduct—offering standard technical support and interacting with forum posts— "raise the reasonable inference that [EZ Lynk] deliberately courted . . . delete-tunes creators and collaborated with them, to ensure that their delete tunes would be compatible with and available to users of EZ Lynk System." *Id*. (citations and internal quotation marks omitted). The panel concluded that EZ Lynk "cannot

3

prevail at this stage of the litigation on their Section 230 immunity defense." *Id*. at 201.

The panel opinion lowers the bar for pleading "material contribution" under Section 230, in direct conflict with *Force* and other precedent of this Court, *see, e.g., LeadClick Media, LLC*, 838 F.3d at 173, as well as decisions from other Circuits, *e.g.*, *Fed. Trade Comm'n v. Accusearch Inc.*, 570 F.3d 1187, 1199 (10th Cir. 2009); *Roommates*, 521 F.3d at 1175. This risks upending Section 230 jurisprudence and opening the floodgates of litigation against online platforms, in contravention of prior precedent and the statute's underlying intent. If merely previewing a platform for third parties is material contribution, every Internet platform, including major platforms with billions of users, would stand to lose Section 230 immunity—in contravention of Congress's desire to support Internet growth and innovation.

The panel opinion creates an incentive for plaintiffs, like EPA, to engage in artful pleading around Section 230, an unwelcome outcome that multiple Circuits have warned against. Under the panel opinion, allegations that fail to rise to the level of material contribution can overcome pleading challenges, "forcing websites to face death by ten thousand duck-bites," *Roommates*, 521 F.3d at 1174, exactly the scenario that Section 230's early immunity is meant to preclude. Because the pre-existing—and properly demanding—pleading bar is critical to a fair administration

4

of Section 230 immunity, panel rehearing or en banc rehearing are both appropriate and warranted.

## ARGUMENT

## I.        SECTION 230 IMMUNITY.

Section 230 was adopted "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. § 230(b)(2). "Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium." *LeadClick Media, LLC*, 838 F.3d at 173 (citation omitted). "To accomplish that goal, Section 230 provides that '[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.'" *Id*. (quoting 47 U.S.C. § 230(c)(1)).

The text of Section 230 is unambiguous. Section 230 immunity is expansive so as to "immunize service providers" from "potential liability for each message republished by their services" to avoid the "restrictive effect" of such potential liability on an ICS provider. *Force*, 934 F.3d at 63 (citation omitted). The statute "shields conduct if the defendant (1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or

5

speaker of that information." *LeadClick*, 838 F.3d at 173 (internal quotation marks omitted). As the panel opinion acknowledges, "the text of Section 230(c)(1) should be construed broadly in favor of immunity." *EZ Lynk, SEZC*, 149 F.4th at 195 (quoting *LeadClick*, 838 F.3d at 174).

The dispute in this case is about the second element of the *LeadClick* test, under which Section 230 "provides immunity only if the interactive computer service does not creat[e] or develop[] the information in whole or in part." *Roommates.Com, LLC*, 521 F.3d at 1166 (internal quotation marks omitted; quoting Section 230). In this Circuit, the standard has been that an ICS is shielded from liability for third-party content "unless the defendant directly and materially contributed to what made the content itself unlawful." *Force*, 934 F.3d at 68 (citation and internal quotation marks omitted).

Thus, allegations of mere neutral assistance or even contribution that does not rise to the level of materiality (*e.g.*, the act of making content available through an ICS, standard customer support responses, or forum interactions) do not suffice to impose liability. But the panel opinion draws inferences in the government's favor in the way a court might reasonably do when faced with a typical motion to dismiss a civil complaint. Under Section 230 and *LeadClick*, the analysis must be more exacting, to keep cases out of court unless the plaintiff plausibly alleges an ICS's *direct material contribution* to a third party's illegal software.

By accepting the government's invitation to read inferences into the Complaint that are not there, the panel opinion opens the door to artful pleading around the *LeadClick* standard. The opinion thus constitutes a departure from this Court's precedent that risks collapsing Section 230 immunity in on itself.

## II. THE PANEL OPINION CREATES INTRA-CIRCUIT CONFLICT.

In *LeadClick*, the Federal Trade Commission brought an action based on false advertising practices. 838 F.3d at 172. Addressing the defendant's Section 230 defenses, this Court held that the defendant was "not entitled to immunity because it participated in the development of the deceptive content posted on fake news pages" and had "also purchased advertising banner space from legitimate news sites with the intent to resell it to affiliates for use on their fake news sites, thereby increasing the likelihood that a consumer would be deceived by that content." *Id*. at 176. Accordingly, "LeadClick [was] not entitled to immunity because it participated in the development of the deceptive content posted on fake news pages." *Id*. Moreover, the defendant was "not being held liable as a publisher or speaker of another's content," but rather was "being held accountable for its *own* deceptive acts or practices—for directly participating in the deceptive scheme by providing edits to affiliate webpages, for purchasing media space on real news sites with the intent to resell that space to its affiliates using fake news sites, and because it had the

7

authority to control those affiliates and allowed them to publish deceptive statements." *Id.*

The EPA prevailed on the panel to shoehorn its pleaded allegations into *Leadclick*, thereby fundamentally altering the pre-existing pleading standard. The panel drew from the Complaint an inference based on allegations that EZ Lynk "worked with" two delete-tune creators, approximately two years before the EZ Lynk System was launched, and also "previewed [an] updated device before its launch in 2018." *EZ Lynk*, 149 F.4th at 200. "Several of the posts cited in the Complaint explicitly refer to drivers installing . . . delete tunes through the EZ Lynk System," and there is an "EZ Lynk Forum Facebook group [that] helps drivers troubleshoot the installation of their delete tune using the EZ Lynk System." *Id.*

The inference drawn from the vague, conclusory, and contentless allegations that third parties "worked" or "collaborated" with EZ Lynk is unfounded. The only allegation that the panel opinion references, in Paragraph 58, merely states that EZ Lynk "previewed" its *own* EZ Lynk System to third-party creators. JA-29. This is not an unusual thing, and occurs with every platform before release—otherwise every platform would launch with no developer applications. There is no allegation in Paragraph 58, or anywhere else in the Complaint, that the delete tunes creators previewed *their* purportedly unlawful software to EZ Lynk or that EZ Lynk "worked

8

with" the third-party creators on their software. The panel's inference is a bridge too far.

The Complaint vaguely alleges "several instances" in which "EZ Lynk technical support representatives use[d] the EZ Lynk Forum to provide technical assistance to drivers to support deletion of emissions controls." *Id.* at 32. The government also cited "various examples in which EZ Lynk representatives 'liked,' 'loved,' or otherwise interacted with posts on the EZ Lynk Forum in which the posting Forum member clearly described using the EZ Lynk System to install delete tunes." *EZ Lynk*, 149 F.4th at 205. The district court carefully parsed the same forum posts and support interactions, however, and found no plausible allegation that EZ Lynk helped install delete tunes or contributed to the unlawful actions of others—as opposed to solving device or connectivity issues after users installed third-party content. JA–110-12, 124-26.

None of the vague allegations in the Complaint—which the EPA declined to amend—supports an inference that EZ Lynk directed any functionality, let alone allegedly unlawful functionality, of the tunes. And the government *never* alleged that EZ Lynk collaborated in any way in the development of delete tunes or helped drivers defeat emission controls, much less that EZ Lynk encouraged illegal deletion functionality. The panel opinion thus turns EZ Lynk's generic customer support into

9

the legal equivalent of "directly and 'materially' contribut[ing] *to what made the content itself unlawful*." *Force*, 934 F.3d at 68 (emphasis added).

The tension between the panel's holding and the applicability of the *LeadClick-Force* principles at the pleading stage fully warrants rehearing en banc. Left undisturbed, the panel opinion would affect the operational core of every internet platform—which Congress expressly sought to protect through Section § 230's early-screening immunity function—by stripping immunity from an ICS that merely (i) provides developer tools, (ii) previews products with third-party creators, (iii) interacts with support forums, or (iv) offers customers technical support.

## III. THE PANEL OPINION CREATES INTER-CIRCUIT CONFLICT.

Section 230 decisions in the other Circuits have insisted on factual allegations that the defendant had a material role in the creation of illegal contact and accord immunity when liability is founded on neutral features or technical support.

The Ninth Circuit developed the material contribution test in *Roommates*, in which it held that a website built a "discriminatory filtering process" when it "designed its search and email systems" to explicitly "limit listings available to subscribers" unlawfully "based on sex, sexual orientation." 521 F.3d at 1167-70. Absent a user's disclosure of protected characteristics, the website could not function. Because the "unlawful content" was a "condition precedent of use" of the

10

website, Section 230 did not shield the platform. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009).

Here, the EPA alleges nothing close—it does not and cannot allege that EZ Lynk forces its users to deploy delete tunes to make the platform operate. *Roommates* provides a key insight as to why this failure mandates dismissal now, and not later, after discovery. A high bar for pleading material contribution is critical: "in cases of enhancement by implication or development by inference . . . section 230 must be interpreted to protect websites not merely from ultimate liability, *but from having to fight costly and protracted legal battles*." *Roommates*, 521 F.3d at 1174-75 (emphasis added); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1099 (9th Cir. 2019) (website used for purchasing illegal drugs did not materially contribute to unlawfulness of content).

The Fourth Circuit, in a similar situation, invoked Section 230 to dismiss claims alleging that an online platform "solicit[ed]" its customers, "steered" them into particular categories on the website, and "help[ed] draft or revise" actionable content. *Nemet Chevrolet*, 591 F.3d at 257. Despite the possible inferences that could be drawn from such allegations, the plaintiff failed sufficiently to allege "materially contributing" to a piece of content's "alleged unlawfulness." *Id.*

The First Circuit does not permit bare inferences about development to survive past Section 230's immunity shield either. In *Small Justice LLC*, for

11

instance, that court ruled that allegations that a platform disseminated and directed others to copy unlawful content did not mean that the platform "authored" or "specifically encourage[d]" it. *Small Just LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 322–23 (1st Cir. 2017). In the First Circuit, "commenting upon user generated content[] does not constitute creation or development." *Id.* (citations and internal quotation marks omitted).

The Sixth Circuit also rejected the notion that a platform that "ratifies or adopts" particular content becomes a "creator" or "developer. Acknowledging that "[m]any websites not only allow but also actively invite and encourage users to post particular types of content," the Sixth Circuit set the bar for overcoming Section 230 beyond mere encouragement. *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 414 (6th Cir. 2014). According to the court in *Jones*, an "encouragement test would inflate the meaning of 'development' to the point of eclipsing the immunity from publisher-liability that Congress established." *Id.* Here, the panel's ruling essentially adopts EPA's 'encouragement' theory. But the "muddiness of an encouragement rule" would "cloud th[e] vision" Congress had of "an uninhibited, robust, and wide-open internet" and create a standard "more difficult to define and apply than the Ninth Circuit's material contribution test." *Id.* at 414-15.

The Sixth Circuit also rejected EPA's other theory, whereby a platform that "ratifies or adopts" particular content becomes a "creator" or "developer." *Id.* at

12

415. Not so, as this too "abuses the concept of responsibility" and creates a "loose understanding of responsibility that collapses into the encouragement measure of 'development,' which we [the Sixth Circuit] reject." *Id.* Like the Ninth Circuit in *Roommates*, *Jones* also noted that "immunity under the CDA should be resolved at an earlier stage of litigation." *Id.* at 417. It is "immunity from suit rather than a mere defense to liability" and would be "effectively lost if a case is erroneously permitted to go to trial." *Id.*

The Seventh Circuit similarly draws a line that excludes speculative causation allegations like the EPA's. In a case involving Craigslist, that court held that to cause unlawful content would require some sort of clear inducement, such as a lower price to those who wish to post unlawful content. Otherwise, the idea of causation collapses, and "[o]ne might as well say that people who save money 'cause' bank robbery, because if there were no banks there could be no bank robberies." *Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008).

The gulf between the panel opinion and other Circuits' precedent cannot be bridged. The panel opinion holds, as sufficient to stave off Section 230 immunity, allegations that third parties created and marketed "delete tunes" software, which software was installed in vehicles by using EZ Lynk's proprietary computer service. There is *no* allegation that EZ Lynk, for its part, created or marketed "delete tunes"

13

software, yet the panel opinion holds that it is "reasonable to infer from the Complaint's allegations that defeating emissions 'is a principal effect' of the EZ Lynk System." *EZ Lynk*, 149 F.4th at 204-05. This holding runs counter to *Roommates'* explicit rejection of the idea that one could plead material contribution through mere inference, as have other circuits, and this one, up until now.

There is nothing in the panel's analysis—because there is nothing in the Complaint—that even suggests EZ Lynk contributed to any delete tune's *illegality*. Instead, the allegations are that EZ Lynk merely provided ICS services for third parties that developed, manufactured, and distributed the offending software. The inter-Circuit conflict and the intra-Circuit conflict show that the panel opinion is indeed an outlier.

If left in place, the panel decision will cause confusion on the proper application of Section 230 immunity, not only at the pleading stage but also well beyond, as publishers, streaming companies, and ICS entities of all kinds struggle to navigate this changed—and now-uncertain—liability landscape. The decision will encourage artful pleading around Section 230 and allow claims against which Congress intended to immunize ICS providers to go forward based on vague inferences of immaterial contributions to unlawful third-party content. This, in turn, would chill Internet speech while also compromising platforms' ability to operate. EZ Lynk accordingly requests this Court to grant rehearing or rehearing en banc.

14

## CONCLUSION

"The message to website operators is clear: If you don't encourage illegal content, or design your website to require users to input illegal content, you will be immune." *Roommates*, 521 F.3d at 1175. That has been the law since Section 230's enactment. The panel opinion upends that understanding and clouds what has been a clear message. EZ Lynk requests the Court to grant rehearing or rehearing en banc.

Dated:      October 3, 2025

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>
Elliot H. Scherker<br>
GREENBERG TRAURIG, P.A.<br>
333 Southeast Second Avenue, Ste. 4400<br>
Miami, Florida 33131<br>
Tel: 305.579.0500<br>
scherkere@gtlaw.com<br>
miamiappellateservice@gtlaw.com<br><br>
Hal S. Shaftel<br>
GREENBERG TRAURIG, LLP<br>
One Vanderbilt Avenue<br>
New York, New York 10017<br>
Tel: 212.801.9200<br>
shaftelh@gtlaw.com
</td><td>
Bernadette Marie Rappold<br>
GREENBERG TRAURIG, LLP<br>
2101 L Street NW, Ste 1000<br>
Washington, DC 20037<br>
Tel: 215.988.7800<br>
rappoldb@gtlaw.com<br><br>
Christopher Neumann<br>
1144 15th Street, Suite 3300<br>
Denver, Colorado 80202<br>
Tel: 303.572.6500<br>
neumannc@gtlaw.com
</td></tr>
</table>

*/s/ Elliot H. Scherker*
Elliot H. Scherker

*Attorneys for Defendant-Appellee*
*EZ Lynk*

15

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This petition contains 3,306 words and complies with the word limit of Fed. R. App. P. 40(d)(3).

This petition complies with the typeface requirements of Fed. R. App. 32 because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 365 in size 14-point Times New Roman font.

*/s/ Elliot H. Scherker*
Elliot H. Scherker

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Elliot H. Scherker*
Elliot H. Scherker

16

Case: 24-2386, 08/20/2025, DktEntry: 76.1, Page 22 of 56

1:21-cv-01986-MKV

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 20, 2025

24-2386
United States v. EZ Lynk

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2024

(Argued: April 29, 2025    Decided: August 20, 2025)

Docket No. 24-2386-cv

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

— v. —

EZ LYNK, SEZC, THOMAS WOOD,
BRADLEY GINTZ,

*Defendants-Appellees,*

PRESTIGE WORLDWIDE SEZC,

*Defendant.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

CERTIFIED COPY ISSUED ON 08/20/2025

B e f o r e :

LYNCH, LEE, and NATHAN, *Circuit Judges.*

---

This case presents two principal questions. The first is whether the government has adequately alleged that the "EZ Lynk System," a product manufactured and sold by Appellees Thomas Wood and Bradley Gintz through their company, Appellee EZ Lynk, SEZC, is a "defeat device[,]" 40 C.F.R. § 1068.101(b)(2), that disables vehicle emissions controls in violation of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B). The second is whether EZ Lynk, Wood, and Gintz, are exempt from liability – even if the EZ Lynk System is a defeat device – because they qualify for immunity under Section 230 of the Communications Decency Act. Section 230 generally protects providers of "interactive computer service[s]" from being held liable for publishing third-party information on their platforms. 47 U.S.C. § 230(c)(1). Appellees argue that they are immunized under Section 230 because they do not write but merely publish the software that disables the relevant emissions controls, and the EZ Lynk System simply allows users to access and implement that third-party software, known as "delete tunes," in their cars.

We agree with the district court that the complaint adequately alleges that the EZ Lynk System is a defeat device. We also conclude, however, that the government's complaint adequately alleges that Appellees "directly and materially contributed to" the creation of delete tunes. *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019) (internal quotation marks omitted). That conclusion renders them ineligible for Section 230 immunity. *See id.* We therefore vacate the district court's judgment dismissing the complaint on Section 230 immunity grounds and remand the case for further proceedings consistent with this opinion.

---

BENJAMIN H. TORRANCE, Assistant United States Attorney (Mónica P. Folch, Jennifer Jude, Zachary Bannon, Assistant United States

Attorneys, *on the brief*) *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

ELLIOT H. SCHERKER, Greenberg Traurig, LLP, Miami, FL (Hal S. Shaftel, Adam Kirschbaum, Greenberg Traurig, LLP, New York, NY, Christopher J. Neumann, Greenberg Traurig, LLP, Denver, CO, Bernadette M. Rappold, Greenberg Traurig, LLP, Philadelphia, PA, *on the brief*) *for Defendants-Appellees.*

Paul N. Harold, Steffen N. Johnson, Wilson Sonsini Goodrich & Rosati, P.C., Washington, D.C., Brian M. Willen, Wilson Sonsini Goodrich & Rosati, P.C., New York, NY, Lauren Gallo White, Wilson Sonsini Goodrich & Rosati, P.C., San Francisco, CA, *for Amici Curiae Chamber of Progress, Computer & Communications Industry Association, Consumer Technology Association, Electronic Frontier Foundation, Engine Advocacy, and NetChoice in support of Defendants-Appellees.*

---

GERARD E. LYNCH, *Circuit Judge*:

This case presents two principal questions. The first is whether the government has adequately alleged that the "EZ Lynk System," a product manufactured and sold by Appellees Thomas Wood and Bradley Gintz through their company, Appellee EZ Lynk, SEZC, is a "defeat device[,]" 40 C.F.R. § 1068.101(b)(2), that disables vehicle emissions controls in violation of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B). The second is whether EZ Lynk, Wood, and

Gintz (together, "Appellees"), are exempt from liability – even if the EZ Lynk System is a defeat device – because they qualify for immunity under Section 230 of the Communications Decency Act. Section 230 generally protects providers of "interactive computer service[s]" from being held liable for publishing third-party information on their platforms. 47 U.S.C. § 230(c)(1). Appellees argue that they are immunized under Section 230 because they do not write but merely publish the software that disables the relevant emissions controls, and the EZ Lynk System simply allows users to access and implement that third-party software, known as "delete tunes," in their cars.

The district court (Mary Kay Vyskocil, *J.*) concluded that the government's complaint (the "Complaint") sufficiently alleged that the EZ Lynk System is a defeat device but granted Appellees' motion to dismiss on the basis of Section 230 immunity, reasoning that "the Complaint does not allege that the EZ Lynk Defendants create delete tunes." *United States v. EZ Lynk SEZC*, No. 21-cv-1986, 2024 WL 1349224, at *11 (S.D.N.Y. Mar. 28, 2024). Accordingly, it concluded that the Complaint sought to hold Appellees liable for distributing third-party information, "which is precisely what Section 230 immunizes." *Id.* The government now appeals the district court's dismissal of its Complaint.

4

We agree with the district court that the Complaint adequately alleges that the EZ Lynk System is a defeat device. We disagree, however, with the district court's immunity conclusion. In our view, the Complaint adequately alleges that Appellees "directly and materially contributed to" the creation of delete tunes. *Force v. Facebook, Inc.*, 934 F.3d 53, 68 (2d Cir. 2019) (internal quotation marks omitted). That conclusion renders them ineligible for Section 230 immunity. *See id.* We therefore VACATE the district court's decision dismissing the Complaint and REMAND the case for further proceedings consistent with this opinion.

## BACKGROUND

### I.      Statutory Background

Because specific provisions of the Clean Air Act and the Communications Decency Act are central to understanding and deciding this case, we begin with a brief overview of both statutes.

### A.      *The Clean Air Act's Prohibition on Defeat Devices*

Congress passed the Clean Air Act in 1963 "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). The Act seeks to achieve that goal in part by requiring all "new motor vehicles or new

motor vehicle engines" sold in the United States to comply with certain emissions standards established by the Environmental Protection Agency ("EPA"). *Id.* §§ 7521(a)(1), 7522(a)(1). Those emissions standards are met through various "emission control device[s], system[s], or element[s] of design installed on, or incorporated in" vehicles or engines during the manufacturing process. *Id.* § 7525(a)(3)(A).

To prevent emissions-control measures from being thwarted post-sale, the Clean Air Act prohibits the manufacturing, sale, and installation of any "defeat device" that "bypasses, impairs, defeats, or disables" a vehicle's emissions controls. 40 C.F.R. § 1068.101(b)(2). Specifically, it forbids

> any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

42 U.S.C. § 7522(a)(3)(B).

### B.    *Immunity Under Section 230 of the Communications Decency Act*

Section 230 of the Communications Decency Act was passed in recognition

6

Case: 24-2386, 08/20/2025, DktEntry: 75.1, Page 28 of 56

that

> The amount of information communicated via interactive computer services is . . . staggering. The specter of . . . liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress . . . chose to immunize service providers to avoid any such restrictive effect.

*Force*, 934 F.3d at 63, quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) (alterations in original). To accomplish that aim, Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

"In applying the statute, courts have 'broken [it] down into three component parts,' finding that '[i]t shields conduct if the defendant (1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information.'" *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016), quoting

Case: 24-2386    08/20/2025    DktEntry: 7511    Page: 29 of 56

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19 (1st Cir. 2016) (internal

quotation marks omitted, alterations in original).

With respect to the second prong, "[t]he term 'information content

provider' means any person or entity that is responsible, in whole or in part, for

the creation or development of information provided through the Internet or any

other interactive computer service." *Force*, 934 F.3d at 68, quoting 47 U.S.C.

§ 230(f)(3). We have explained that "a defendant will not be considered to have

developed third-party content unless the defendant directly and 'materially'

contributed to what made the content itself 'unlawful.'" *Id.*, quoting *LeadClick*,

838 F.3d at 174.

In keeping with Section 230's protective aim, we have also noted that "the

text of Section 230(c)(1) should be construed broadly in favor of immunity." *Id.* at

64.

## II.    Factual Allegations in the Complaint

As alleged in the Complaint, EZ Lynk manufactures and sells the EZ Lynk

System, a three-part system that allows car owners to download and install

software that alters the functioning of the computer systems in their cars. "The

physical component of the system is the EZ Lynk Auto Agent, an electronic

device that plugs into a vehicle's [on-board diagnostics] port to access, override, or reprogram the vehicle's computer system." Joint App'x 25. "The EZ Lynk system also includes a smartphone application called the 'Auto Agent App,' which connects the EZ Lynk Auto Agent to EZ Lynk's Internet-based service called the 'EZ Lynk Cloud.'" *Id.* 25–26. Once connected to the Cloud, drivers can "send and receive data and software relating to their vehicles' computer systems," allowing them to "[s]hare, record, and reprogram [their] vehicle easily from [their] [s]martphone." *Id.* 26 (first alteration in original) (internal quotation marks omitted).

The EZ Lynk System allows drivers to obtain and install software called "tunes" to reprogram their vehicles. *Id.* These "tunes" are created by "[t]hird-party companies and individuals," referred to as "technicians" by EZ Lynk, but are accessed and installed through the EZ Lynk System. *Id.* EZ Lynk "provide[s] technicians with a free, cloud-based software program" that allows them "to create tunes for use with the EZ Lynk System." *Id.* 30. EZ Lynk also provides "storage space" in the Cloud where the third-party technicians can upload and store their tunes. *Id.* 27. Drivers can access and download tunes stored in the EZ Lynk Cloud through the Auto Agent App. "Many" of the tunes available through

9

the EZ Lynk System are "'delete tunes' [that] are capable of defeating" the emissions-related elements of a car installed by the manufacturer to comply with the Clean Air Act. *Id.* 26.

Gintz and Wood are co-founders, co-owners, and directors of EZ Lynk. They also co-own Prestige Worldwide, SEZC, which purchases Auto Agent devices from EZ Lynk and sells them to U.S.-based distributors. Together, Gintz and Wood "control[ ], direct[ ], and manage[ ] the marketing and sale of the EZ Lynk System as well as the technical support for the EZ Lynk System." *Id.* 16.

In 2016, Gintz and Wood filed a patent application on behalf of EZ Lynk, seeking to patent a "[s]ystem and method for real time wireless [Engine Control Unit] monitoring and reprogramming" – *i.e.*, a first-generation EZ Lynk System. *Id.* 24–25. The application describes in detail how the device is capable of reprogramming specific settings that impact emissions controls.

Prior to launching the EZ Lynk System, Gintz, Wood, and EZ Lynk previewed the system for at least two technicians – Power Performance Enterprises, Inc. ("PPEI") and GDP Tuning – both of which went on to create delete tunes that were later disseminated through the EZ Lynk System. Following the System's launch, third parties, including Gintz's separate

10

automotive company, Calvin's Auto Repair, have also marketed and sold the EZ

Lynk System bundled with pre-purchased delete tunes for $1,349 and more.[1]

EZ Lynk also maintains a once-public (but now private) Facebook group

known as the "EZ Lynk Forum" as "a resource for drivers seeking information

and support for everything related to the EZ Lynk [Auto Agent]." *Id.* 31 (internal

quotation marks omitted). The forum provides contact information for EZ Lynk's

technical support team. It is administered by EZ Lynk and PPEI representatives,

including the owner of PPEI. "Hundreds of posts on the EZ Lynk Forum refer to

the use of the EZ Lynk System to 'delete' emissions controls."[2] *Id.* 32. EZ Lynk

representatives have "liked" and "loved" various of those posts. *Id.* (internal

quotation marks omitted). Certain posts reported that EZ Lynk technical support

representatives had also directly assisted drivers who had encountered

difficulties installing the System. Those posts represented that the drivers

intended to use the System, once installed, to "delete" their vehicles' emissions

controls and that EZ Lynk's technical support team had helped them

---

[1] The system has also been sold without tunes through online platforms like Amazon, eBay, and Walmart.

[2] The Complaint does not allege what proportion of the total number of posts on the Forum consisted of such posts.

troubleshoot problems doing so. *Id.* 32. Other posts indicated that drivers were

using delete tunes on vehicles used for "day-to-day driving on public roads and

highways." *Id.* 33.

The Complaint also explicitly alleges that the EZ Lynk System has been

widely used across the United States to delete emissions controls. For example,

"[d]uring a single three-month period from October 2017 through December

2017, the [government] found more than 50 advertisements for vehicles with

emissions controls that had been 'deleted' using the EZ Lynk System[] in more

than twenty states." *Id.* 35**.** The Complaint also includes allegations of a similar

advertisement posted as recently as May 2020 – less than a year before the

Complaint was filed.

## III.    Procedural Background

The government filed its Complaint against EZ Lynk, Prestige, Gintz, and

Wood on March 8, 2021, in the Southern District of New York. The Complaint

alleged among other claims that the Appellees were liable for manufacturing and

selling a defeat device in violation of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B).[3]

---

[3] The Complaint also alleged that EZ Lynk, Gintz, and Wood had failed to meet certain
disclosure requirements pursuant to Section 208 of the Clean Air Act. The district court
rejected the defendants' motion to dismiss that claim but also declined to grant
summary judgment to the government. *EZ Lynk SEZC,* 2024 WL 1349224, at *12–14.

All the defendants moved to dismiss the § 7522(a)(3)(B) claim on two grounds: first, that the EZ Lynk System is not a "defeat device" prohibited by the Clean Air Act, and second, that they were immune from liability under Section 230. *See* Def.s' Mot. to Dismiss, *United States v. EZ Lynk SEZC*, No. 21-cv-1986, 2024 WL 1349224 (S.D.N.Y. Mar. 28, 2024), ECF No. 44. Specifically, the defendants argued that the Complaint did not allege a violation of 42 U.S.C. § 7522(a)(3)(B), because it (1) did not allege that the EZ Lynk System is a "'part or component'" of a motor vehicle, *id.* 21–27; (2) failed to allege that the System had "'a principal effect'" of defeating emissions controls, *id.* 27–33; (3) did not allege that the defendants knew or should have known about that "[p]urported '[p]rincipal [e]ffect,'" *id.* 33–35; and (4) failed to plead individual liability as to Gintz and Wood, *id.* 35. They argued that they were also entitled to Section 230 immunity because (1) the EZ Lynk System was an "'interactive computer service,'" *id.* 13–14; (2) the claims would treat them as "'publishers'" of "'delete tunes,'" *id.* 14–15; and (3) third parties – not Appellees – developed and posted the delete tunes, *id.* 15–19.

---

Prior to this appeal, the government voluntarily dismissed that Section 208 claim with prejudice.

The district court granted the motion to dismiss. *EZ Lynk SEZC*, 2024 WL 1349224, at *14. As an initial matter, it held that the government had adequately alleged that the EZ Lynk System *was* a defeat device. *Id.* at *8. Specifically, it held that the Complaint adequately alleged that the System – which included a physical device that must be plugged into a car port to function – was a "part or component intended for use with a motor vehicle." *Id.* at *7-8 (internal quotation marks omitted). It also held that "*a* principal effect" of the System was to "defeat emissions controls," pointing to the allegation that "many" of the tunes available on the EZ Lynk Cloud were capable of deleting emissions controls and had been used for that purpose. *Id.* at *8 (emphasis in original) (internal quotation marks omitted), citing Joint App'x 26. And it held that the government had adequately alleged that EZ Lynk knew or should have known that the System was being used to defeat emissions controls, based on a plethora of posts from the EZ Lynk-administered "EZ Lynk Forum" Facebook group. *Id.*, citing Joint App'x 31–33 (internal quotation marks omitted).[4]

---

[4] The district court held that the government had *not* demonstrated that co-defendant Prestige had sold a defeat device, because Prestige merely sold the Auto Agent device, which could not by itself be used to defeat auto emissions controls. *EZ Lynk SEZC*, 2024 WL 1349224, at *8. Thus, it ordered the case dismissed as to Prestige. *Id*. The government does not appeal that dismissal here. Additionally, because the district court determined that the government's claims with respect to the individual defendants

However, the district court also concluded that the requirements for Section 230 immunity were clear on the face of the Complaint. It observed that "[b]ecause the EZ Lynk Defendants provide the EZ Lynk Cloud, they provide an interactive computer service within the meaning of the Communications Decency Act." *Id.* at *9. It held that the tunes available for download through the EZ Lynk System constitute "information" for purposes of the same Act. *Id.* at *10. And it concluded that because the Complaint alleges that "delete tunes are created by '[t]hird-party companies and individuals'" and Appellees merely make those tunes "publicly available," the government's claims would hold Appellees liable for acting as publishers of third-party information – "precisely what Section 230 immunizes," *id.* at *10–11 (alteration in original). Accordingly, it granted Appellees' motion to dismiss. *Id.* at *12.

This appeal followed.

## DISCUSSION

### I.    Motion to Dismiss Standard

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences

---

could be dismissed on other grounds, it declined to analyze separately their liability under the 42 U.S.C. § 7522(a)(3)(B). *Id.*

15

in the plaintiff's favor." *Slattery v. Hochul*, 61 F.4th 278, 285–86 (2d Cir. 2023),

quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021). "To avoid

dismissal, a complaint must plead 'enough facts to state a claim to relief that is

plausible on its face.'" *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489

(2d Cir. 2018), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.*, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Documents explicitly referenced in a complaint are considered part of the

complaint and may also be considered for purposes of the motion to dismiss.

*Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

Defendants may raise affirmative defenses at the motion to dismiss stage;

however, "affirmative defenses . . . 'often require[ ] consideration of facts outside

of the complaint.'" *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 153

(2d Cir. 2024), quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)

(alteration in original). For that reason, we have clarified that "[a] district court

may grant a motion to dismiss for failure to state a claim on the basis of an

affirmative defense only when facts supporting the defense appear on the face of

16

the complaint." *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 142 (2d Cir. 2023), *cert.*

*denied sub nom. Stafiniak v. Kirschner as Tr. of NWHI Litig. Tr.*, 144 S. Ct. 2551

(2024).

Section 230 immunity is an affirmative defense. *Force*, 934 F.3d at 57.

Accordingly, we have affirmed grants of motions to dismiss based on Section 230

immunity where the facts supporting that immunity have appeared on the face of

a complaint.[5] *See id.*; *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir.

2015); *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (summary

---

[5] The government suggests that "[t]he district court was wrong to dismiss this action at the pleading stage, particularly given that the Communications Decency Act is an affirmative defense that EZ Lynk bears the burden of establishing." Appellant's Br. 3. In response, Appellees urge that Section 230 immunity should be decided "at the earliest possible stage of the case" in order to effectuate Congress's intention to "protect interactive computer services from . . . costly and protracted legal battles." Appellees' Br. 32 (alteration adopted) (internal quotation marks omitted). Ultimately, though, both sides agree that Section 230 immunity can be decided at the motion to dismiss stage if and only if the defense is evident on the face of the complaint. *See id.* 33, quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 ("an affirmative defense of official immunity should be resolved as early as possible . . . and may be resolved by Rule 12(b)(6) *if clearly established by allegations within the complaint*") (emphasis added); Appellant's Br. 22, citing *Michael Grecco Prods., Inc.*, 112 F.4th at 149; *see also Force*, 934 F.3d at 57 (applying Section 230 immunity based on allegations in the complaint); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015) (same); *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (same). Thus, their disagreement centers not on the proper procedural posture for asserting a Section 230 immunity defense generally – which is well-established under our precedents – but instead on whether the Complaint *in this case specifically* includes allegations that establish a Section 230 immunity defense.

17

order). We review a district court's grant of a Rule 12(b)(6) motion to dismiss on the basis of Section 230 immunity *de novo* as well. *Force*, 934 F.3d at 62.

## II.   The Complaint alleges facts sufficient to defeat immunity under Section 230 of the Communications Decency Act.

We begin with the dispositive issue below: Section 230 immunity. As discussed above, Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The government does not dispute that EZ Lynk provides an "interactive computer service." However, the parties disagree about whether (1) delete tunes published on the EZ Lynk Cloud are "information" within the scope of Section 230; (2) the government's theory would impose liability on EZ Lynk *for publishing* delete tunes (as opposed to imposing liability for developing or selling an illegal product); and (3) the Complaint sufficiently alleges that EZ Lynk "directly and 'materially' contributed to" the creation of the emissions-control-defeating delete tunes, *Force*, 934 F.3d at 68, quoting *LeadClick*, 838 F.3d at 174.

The district court concluded that Appellees were entitled to Section 230 immunity because, in its view, the Complaint's allegations "fall far short of alleging direct and material contributions to illegal activity" sufficient to defeat

18

that immunity. *EZ Lynk SEZC*, 2024 WL 1349224, at *12. We disagree. Even assuming for the sake of argument that the delete tunes are "information"[6] and Appellees are being "treated as the[ir] publisher,"[7] Appellees are not entitled to Section 230 immunity at this stage because allegations in the Complaint support an inference that they "directly and materially contributed to" the creation of delete tunes. *Force*, 934 F.3d at 68 (internal quotation marks omitted).

"Th[e] 'material contribution' test . . . 'draw[s] the line at the crucial distinction between, on the one hand, taking actions to display actionable content

---

[6] This Court has not yet decided whether software applications should be considered "information" within that term's ordinary meaning for purposes of Section 230, and it is unnecessary to reach that issue here, in light of our analysis of the "direct and material contribution" issue. However, we note that at least two of our sister circuits have held that "information" readily encompasses software applications. In 2003, the Third Circuit applied Section 230 immunity to AOL for "a computer program created by a hacker whose purpose [wa]s to halt and disrupt another computer" that was posted by one user in an AOL chatroom and (inadvertently) downloaded by another. *Green v. Am. Online (AOL)*, 318 F.3d 465, 468–69 (3d Cir. 2003). And the Ninth Circuit has determined that a malicious application hosted on Apple's App Store was "'information provided by another content provider' within the meaning of [Section 230]." *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *1 (9th Cir. Mar. 27, 2024) (memorandum).

[7] On this point, we also note that we have held that "the heartland of what it means to be the 'publisher' of information under Section 230" encompasses an interactive computer service provider's failure to remove content posted its platform. *Force*, 934 F.3d at 65. Even closer to our facts here, the Ninth Circuit has also held that a defendant's "authorization, monitoring, or failure to remove" an application from an app store was likewise a "quintessential 'publication decision[]'" immune from liability under Section 230. *Diep*, 2024 WL 1299995, at *1.

19

and, on the other hand, responsibility for what makes the displayed content

[itself] illegal or actionable.'" *Force*, 934 F.3d at 68, quoting *Kimzey v. Yelp! Inc.*,

836 F.3d 1263, 1269 n.4 (9th Cir. 2016) (alterations accepted) (internal quotation

marks omitted). For example, we have cited approvingly the Tenth Circuit's

conclusion that "a defendant who paid researchers to uncover confidential phone

records protected by law, and then provided that information to paying

customers" had provided a direct and material contribution to the actionable

conduct. *Leadclick*, 838 F.3d at 174, citing *Fed. Trade Comm'n v. Accusearch Inc.*, 570

F.3d 1187, 1199 (10th Cir. 2009). There, we explained, the *Accusearch* defendant

directly and materially contributed to the underlying illegal conduct "because he

did not merely act as a neutral intermediary, but instead 'specifically

encourage[d] development of what [was] offensive about the content'" by

soliciting and paying for the protected information. *Id.*, quoting *Accusearch Inc.*,

570 F.3d at 1199 (alterations in original).

We have also held that an online affiliate marketing network lost Section

230 immunity against deceptive advertising claims by "participat[ing] in the

development of . . . deceptive content posted on fake news pages," including by

"recruit[ing] affiliates . . . that used false new sites," "pa[ying] those affiliates to

20

advertise [its] products online," and "advis[ing] affiliates to edit content on affiliate pages." *Leadclick*, 838 F.3d at 176. Because the company had "participated in the development of its affiliates' deceptive websites," we found that it had "materially contribut[ed] to the content's alleged unlawfulness." *Id.* (internal quotation marks omitted, alteration accepted).

As alleged, EZ Lynk "directly and materially" contributed to the development of delete tunes disseminated through the EZ Lynk System. It worked with delete-tune creator PPEI "in the early stages of testing the EZ Lynk System[,] approximately two years before the system's launch in 2016," and again previewed the updated device before its launch in 2018. Joint App'x 29. Several of the posts cited in the Complaint explicitly refer to drivers installing PPEI-provided delete tunes through the EZ Lynk System, and PPEI jointly administers the EZ Lynk Forum Facebook group, helping drivers troubleshoot the installation of their delete tunes using the EZ Lynk System. The Complaint also alleges EZ Lynk "work[ed] with" and "collaborated with" delete-tune creator GDP Tuning before the EZ Lynk System was publicly available. *Id.*

Contrary to the district court's assessment, those allegations do not merely suggest "guilt-by-association." *EZ Lynk SEZC*, 2024 WL 1349224, at *11. Instead,

they raise the reasonable inference that Appellees deliberately courted – *i.e.*, "recruited," *Leadclick*, 838 F.3d at 176 – delete-tunes creators and "collaborated with" them, Joint App'x 29, to ensure that their delete tunes would be compatible with and available to users of the EZ Lynk System. Under that inference, Appellees "did not merely act as . . . neutral intermediar[ies]" between the delete tunes creators and vehicle owners "but instead 'specifically encourage[d] development of what [was] offensive about the content.'" *Leadclick*, 838 F.3d at 174, quoting *Accusearch Inc.*, 570 F.3d at 1199 (alterations in original). Accordingly, contrary to the district court's conclusion, Appellees cannot prevail at this stage of the litigation on their Section 230 immunity defense.[8]

### III.    The Complaint alleges a *prima facie* claim under the Clean Air Act.

Appellees argue that even if they are not entitled to Section 230 immunity, they are still entitled to dismissal because the district court erred when it held "in *dicta* in a very cursory analysis that the government had alleged a *prima facie*

---

[8] To be clear, we hold only that the facts alleged in the Complaint do not show that Appellees are entitled to Section 230 immunity. Discovery may reveal additional facts that refute those allegations or supplement them with additional factual context that undermines the inferences that the government seeks to draw from them. But those are questions for decision at the summary judgment stage. As noted above, an affirmative defense can prevail in a Rule 12(b)(6) motion only when the allegations in the complaint itself demonstrate the existence of the defense. *See Michael Grecco Prods., Inc.*, 112 F.4th at 153.

claim under . . . § 7522(a)(3)(B)." Appellees' Br. 19. Specifically, they revive their

arguments that the Complaint

> (a)    "never alleges the EZ Lynk System is a 'part or component'" for purposes of the prohibition;
>
> (b)    "fails to allege the EZ Lynk System has a principal effect of defeating emissions controls;" and
>
> (c)    "contains no credible allegations imputing . . . to EZ Lynk" knowledge that the EZ Lynk System was being used to defeat emissions controls.

*Id.* 20-22 (emphasis omitted).

We "may affirm on any basis for which there is sufficient support in the

record." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 148 (2d Cir.

2020) (internal quotation marks omitted). However, for the reasons we explain

below, Appellees are wrong on all three fronts, and the Complaint adequately

alleges that the EZ Lynk System is a defeat device for purposes of 42 U.S.C.

§ 7522(a)(3)(B)**.** Accordingly, we decline their invitation to affirm the district

court's judgment on alternative grounds.

### A.    *The Complaint adequately alleges that the EZ Lynk System is a "part or component" for purposes of the Clean Air Act.*

First, the Complaint includes sufficient allegations that the EZ Lynk

System is a "part or component intended for use with, or as part of, any motor

vehicle or motor vehicle engine." 42 U.S.C. § 7522(a)(3)(B). The terms "part" and

"component" are undefined, so we give them their "ordinary meaning[s],

considering the 'commonly understood meaning of the statute's words at the

time Congress enacted the statute, and with a view to their place in the overall

statutory scheme.'" *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir.

2022), quoting *In re Bernard L. Madoff Inv. Secs. LLC*, 12 F.4th 171, 186 (2d Cir.

2021). The provision at issue was enacted in 1990, making that year the touch-

point for our consideration. Pub. L. No. 101-549, Title II, §§ 228(a), (b), (e), 230(6),

Nov. 15, 1990, 104 Stat. 2507, 2511, 2529.

As the government observes, at least one contemporaneous dictionary –

the 1992 edition of the American Heritage Dictionary of the English Language –

defines both "part" and "component" capaciously, covering the Complaint's

description of the EZ Lynk System. Specifically, it defines "part" as "[a]

component that can be separated from or attached to a system; a detachable

piece" (and its definition explicitly encompasses "spare parts for cars"). *Part*,

*American Heritage Dictionary of the English Language* (3d ed. 1992), *available at*

https://perma.cc/CR9D-8V47. "Component" is similarly defined as "[a]

24

constituent element, as of a system." *Component*, *American Heritage Dictionary of the English Language* (3d ed. 1992), *available at* https://perma.cc/W2L2-B5EC.

As described in the Complaint, the EZ Lynk System easily meets those definitions. It includes "a physical device that plugs into vehicle computer systems to install software" that "disable[s] . . . [a] motor vehicle['s] emissions controls." Joint App'x 14. That makes it a "detachable piece" or "[a] component that can be separated from or attached to" an automobile, and when attached, it is a "constituent element" of a motor vehicle's "system" – in other words, a "part" or "component."[9]

Appellees' arguments to the contrary are unconvincing because they depend on a cramped reading of the terms, pulled from their context. Specifically, Appellees suggest that a "part" or "component" must be "a portion of a unit or whole—meaning, portions of the motor vehicle or engine" – which they argue the EZ Lynk System clearly is not, because it is not original or integral to a car's structure or function.[10] Appellees' Br. 55–56. Instead, they contend, the

_____

[9] Appellees do not argue that the EZ Lynk System is not "intended for use with" a motor vehicle.

[10] To support that contention, they point to definitions from the 2024 online edition of Merriam-Webster, which defines "part" as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole," *see* Appellees' Br. 55-56, quoting *Part*, MERRIAM-WEBSTER.COM,

EZ Lynk System is more like a phone or GPS device: "accessories" which can also be plugged into a car but are not integral to it. *Id.* 57.

However, Appellees' preferred reading not only is contrary to the contemporaneous definitions of "part" and "component" identified by the government but also would render various other language in 42 U.S.C. § 7522(a)(3)(B) superfluous. Specifically, it would make the statute's "intended for use with" language redundant in two ways. First, Appellees' reading would effectively strike out that language, because under their reading, there would be no distinction between "any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine" and "any part or component . . . of[] any motor vehicle or motor vehicle engine." 42 U.S.C. § 7522(a)(3)(B). Second, their reading would collapse the difference between a "part or component intended for use *with* . . . any motor vehicle" and a "part or component intended for use . . . *as part of*[ a] motor vehicle." *Id.* (emphasis added). Further, their reading fails to acknowledge that the terms are preceded by "any" – a word that

https://www.merriam-webster.com/dictionary/part (visited Dec. 9, 2024), and "component" as "a constituent part," *see id.*, quoting *Component*, MERRIAM-WEBSTER.COM, *available at* https://www.merriam-webster.com/dictionary/component (visited Dec. 9, 2024).

the Supreme Court has observed has an "expansive" (not restrictive) meaning. *Dep't of Hous. & Urb. Dev. v. Rucker*, 535 U.S. 125, 126 (2002).

Under normal rules of statutory interpretation, "courts must give effect to all of a statute's provisions 'so that no part will be inoperative or superfluous, void or insignificant.'" *United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016), quoting *Corley v. United States*, 556 U.S. 303, 314 (2009). Thus, Appellees' criticism of the government and district court's more "capacious" interpretation of the statute is unavailing. Appellees' Br. 57. The government's reading gives effect to all terms within 42 U.S.C. § 7522(a)(3)(B), making it the better interpretation – and under that interpretation, the Complaint clearly alleges that the EZ Lynk System is a "part or component" for purposes of the statute.[11]

---

[11] Appellees also argue that the EZ Lynk System should be considered a "tool" rather than a "part" or "component," and they fault the district court for "giv[ing] no consideration to the word 'tool' as used in Section 202(m) of the [Clean Air] Act, 42 U.S.C. § 7521(m)." Appellees' Br. 57. If the term "tool" in fact appeared in § 7521(m), that would perhaps support Appellees' argument, given our usual rule that "[i]n a given statute, . . . different terms usually have different meanings." *Pulsifer v. United States*, 601 U.S. 124, 149 (2024). However, as the government observes, "[t]he word 'tool' is not used in § 7521." Reply Br. 22 n.7.  Accordingly, we find no indication in the statute that a "tool" cannot also be a "part or component" where it meets the definitions above. Nor does it alter our conclusion that certain Clean Air Act regulations contemplate the existence of permissible "aftermarket pass-through reprogramming tools." 40 C.F.R. § 86.1808-01(f)(17)(iv). Though Appellees urge that deeming such a tool a car "part or component" will "pose an insurmountable hurdle to creation of . . . reprogramming tools," Appellees' Br. 59 n.14, nothing about our conclusion here would affect the manufacturing, sale, or use of such a tool if defeating emissions controls were not one of

**B.      The Complaint adequately alleges that "a principal effect" of the EZ Lynk System is to defeat emissions controls.**

Second, the Complaint adequately alleges that defeating emissions controls is "a principal effect" of the EZ Lynk System. Again the undefined terms "effect" and "principal" are given their ordinary meaning. *Springfield Hosp., Inc.*, 28 F.4th at 418. Accordingly, "effect" can be understood as "[s]omething brought about by a cause or agent; a result." *Effect*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992), *available at* https://perma.cc/F26C-3C37; *see also Effect*, BLACK'S LAW DICTIONARY (6th ed. 1990) (defining "effect" to mean "[t]hat which is produced by an agent or cause; result; outcome; consequence"). And "principal" means "[f]irst, highest, or foremost in importance." *Principal*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992), *available at* https://perma.cc/LN6E-42W5; *see also Principal*, BLACK'S LAW DICTIONARY (6th ed. 1990) (defining "principal" to mean "[c]hief; leading; most important or considerable").

Appellees maintain that the EZ Lynk System cannot have a "principal effect" of defeating emissions controls because the System itself – as

---

the tool's "*principal* effect[s]," *see* 42 U.S.C. § 7522(a)(3)(B) (emphasis added). Thus, Appellees' concerns are unavailing.

28

distinguished from the delete tunes – has "*no effect* on emissions controls."

Appellee's Br. 60 (emphasis in original). But the observation that the System

would not affect emissions controls without the delete tunes is a *non sequitur*: the

Complaint clearly alleges that "[m]any of the . . . tunes [available through the EZ

Lynk System] are so-called 'delete tunes,' which are capable of defeating"

emissions controls. Joint App'x 26. It further alleges that the EZ Lynk System

"enables drivers to acquire [those] delete tunes" and install them in their

vehicles, *id.* 26-27, and that "posts on the EZ Lynk Forum refer to the use of the

EZ Lynk System to 'delete' emissions controls in vehicles from across the United

States," *id.* 32. Thus there is no serious argument against the conclusion that,

according to the Complaint, one "result" or "consequence" of the EZ Lynk

System is the "bypass[ing], defeat[ing], or render[ing] inoperative" of emissions

controls in some users' vehicles. 42 U.S.C. § 7522(a)(3)(B).[12]

---

[12] As the government points out, "the absence of pre-loaded delete tunes on the EZ Lynk Auto Agent does not alter the 'effects' of the EZ Lynk system as it is 'used with' vehicles by EZ Lynk customers." Appellant's Reply Br. 24 (alteration accepted). Congress deliberately chose to focus on "effect" rather than manufacturers' intent when drafting the "defeat device" provision – and it chose to do so over parts' manufacturers' explicit objections. *See* Clean Air Act Amendments (Part 1): Hearing before the Subcommittee on Health and the Environment of the Committee on Energy and Commerce House of Representatives, 100th Cong. 496-519 (Sept. 23, 1987) (statement by Julian C. Morris, Automotive Parts and Accessories Association, Inc.). Julian C. Morris, a representative of the Automotive Parts and Accessories Association, addressed an earlier version of

Thus, the key issue is not whether defeating emissions controls is *an effect* of the System but instead whether it is "a principal" effect – in other words, one of the System's "highest," "most important," or "considerable" effects. For purposes of a motion to dismiss, we believe the Complaint has sufficiently alleged that it is.

The Complaint alleges not only that delete tunes are available through the EZ Lynk System but that "[m]any" of the available tunes are intended to defeat emissions controls. Joint App'x 26. It also includes numerous allegations about the System's widespread sale and use by third parties *for that purpose*. For example, it describes how the EZ Lynk System has been bundled with pre-downloaded delete tunes for sale by third parties – including by Gintz's own automotive company. It points to "[h]undreds of posts, statements, pictures, and/or videos" posted to online message boards and social media sites by individuals claiming to have used the EZ Lynk System to install delete tunes.

---

the anti-defeat device provision and argued that parts manufactures should not be forced to make the "impossible qualitative determination of whether the use of a part for tampering is 'a princip[al] use' when compared to use of the same part for legitimate purposes which may also include 'princip[al] uses.'" *Id.* at 517–18. To address that concern, Morris urged Congress to add a specific intent requirement to the provision. *Id.* at 518. As shown in the final statutory text, however, Congress declined that invitation. 42 U.S.C. § 7522(a)(3)(B).

30

*Id.* 34. It describes multiple YouTube videos in which car owners discuss using the EZ Lynk System to delete emissions controls from their vehicles. *Id.* 36-37. Finally, it describes how "[d]uring a single three-month period from October 2017 through December 2017, the [government] found more than 50 advertisements for vehicles with emissions controls that had been 'deleted' using the EZ Lynk System[] in more than twenty states." *Id.* 35-36.

Those allegations strongly suggest that the EZ Lynk System has been widely used to defeat emissions controls in vehicles across the country. It is thus reasonable to infer from the Complaint's allegations that defeating emissions controls is "a principal effect" of the EZ Lynk System. And that reasonable inference is all that is required to meet the government's burden at this stage of the litigation. *See Hardaway*, 879 F.3d at 489.[13]

### C.    *The Complaint adequately alleges that Appellees knew the EZ Lynk System was being used to defeat emissions controls.*

Finally, classic principles of *respondeat superior* are sufficient to address the requirement that EZ Lynk[14] "kn[e]w[] or should [have] know[n]" that the EZ

---

[13] Again we stress that the issue before us is the viability of the Complaint. Additional facts adduced by the Appellees could refute the inferences the government seeks to draw.

[14] The district court below declined to address whether the Complaint adequately alleged liability, including the requisite knowledge, as to the individual defendants,

Lynk System was "being offered for sale or installed for. . . or put to" the use of defeating emissions controls. 42 U.S.C. § 7522(a)(3)(B).

> In general, when an agent is employed to perform certain duties for his principal and acquires knowledge material to those duties, the agent's knowledge is imputed to the principal. Thus, "it is elementary" that a corporation "can be guilty of 'knowing' . . . violations of regulatory statutes through the doctrine of *respondeat superior*."

*Consol. Edison Co. of New York v. United States*, 221 F.3d 364, 370 (2d Cir. 2000), quoting *Apollo Fuel Oil v. United States*, 195 F.3d 74, 76–77 (2d Cir. 1999); *see also Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 179 (2d Cir. 2004) (noting the "usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal").

The Complaint alleges several instances where "EZ Lynk technical support representatives use[d] the EZ Lynk Forum to provide technical assistance to drivers to support deletion of emissions controls." Joint App'x 32. One EZ Lynk Forum member recounted receiving help from an EZ Lynk representative when a delete tune caused certain dashboard lights in his newly "deleted" truck to

---

Wood and Gintz. *See EZ Lynk SEZC*, 2024 WL 1349224, at *8. "[G]enerally we decline considering arguments not addressed by the district court." *Bacolitsas v. 86th & 3rd Owner, LLC*, 702 F.3d 673, 681 (2d Cir. 2012). In keeping with that general practice, we leave it to the district court to address that issue in the first instance on remand, in light of our Section 230 analysis above and our § 7522(a)(3)(B) analysis here.

illuminate unexpectedly. The member wrote that the "[p]roblems [were] fixed with the help of EZ Lynk's Technical Support representative" and the technician that had provided the delete tune. *Id.* (emphasis omitted). When a different member reported difficulty accessing certain PPEI delete tunes through their EZ Lynk System, an EZ Lynk Technical Support representative responded and worked with that member and PPEI's owner to troubleshoot and solve the problem. After the problem was resolved, the member responded, "Thank you so much for the awesome service! I love the way my truck is *now being deleted*!" *Id.* (emphasis in original).

The Complaint also identifies various examples in which EZ Lynk representatives "liked," "loved," or otherwise interacted with posts on the EZ Lynk Forum in which the posting Forum member clearly described using the EZ Lynk System to install delete tunes. *See* Joint App'x 31–34. For example, a representative "loved" a post that read, "My ezlynk has worked great since the day I had it installed! *Even going from stock [manufacturer's settings] to deleted I had ZERO issues*!" *Id.* 33 (emphasis in original). Another representative "loved" a post in which the member wrote, "Finally made the jump and *deleted my 14 Ram 2500*: Holy hell, this thing is awesome. *The EZ Lynk worked flawlessly*." *Id.* 32 (first

33

emphasis in original, second emphasis added) (alteration accepted). Another

"loved" a post that read, "Couldn't be happier with my ez lynk. *Truck has shown*

*huge improvements with the deletes and new tunes.*" *Id.* (emphasis in original). And

yet another post referred to a member's questions about setting up an "ez

Lynk/delete set up." *Id.* (emphasis omitted). A responding member

recommended reaching out to EZ Lynk's customer service team for help – and, in

response, an EZ Lynk representative "liked" the post.

Based on those allegations, employees of EZ Lynk clearly "kn[e]w[] or

should [have] know[n]" based on their technical service functions and their

engagement with the EZ Lynk Forum that the System was being used to defeat

emissions controls. 42 U.S.C. § 7522(a)(3)(B)**.** That knowledge can be imputed to

the company via *respondeat superior*. *See Bank of China*, 359 F.3d at 179.

Accordingly, the Complaint has adequately alleged knowledge.

Appellees object that knowledge cannot be imputed from the unnamed,

low-level employees mentioned in the Complaint. As authority for that

proposition, they cite a single Fifth Circuit case. *See* Appellees' Br. 64, citing

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 848 F.3d 366, 374 (5th Cir.

2017). But that case does not support their position. Not only does it construe a

34

different statute, at a different stage of the case, but also, as the government points out, "in an earlier decision examining the sufficiency of the allegations in the same case, the Fifth Circuit held that allegations that employees acted within the scope of their employment or were of managerial ranks were not required to survive a motion to dismiss." Reply Br. 28, citing *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 350, 353 & n.14 (5th Cir. 2013). The Complaint clearly alleges that EZ Lynk Technical Support representatives encountered evidence that the EZ Lynk System was being used as a defeat device. Thus, *Kellogg Brown & Root, Inc.* is far from helpful to Appellees here – and without that, their objections on this front are entirely unsupported.

Accordingly, the government has adequately alleged all three of the contested elements necessary to establish that EZ Lynk is liable for selling a defeat device under the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B). Given that conclusion and our Section 230 analysis above, we must vacate the judgment of the district court dismissing the Complaint.

## CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** this case for further proceedings consistent with this opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

35